******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARGARET E. DAY, COCONSERVATOR (ESTATE OF SUSAN D. ELIA) *v.* RENEE F. SEBLATNIGG ET AL.
## (AC 38734)

DiPentima, C. J., and Prescott and Flynn, Js.

*Syllabus*

The plaintiff, the coconservator of the estate of E, brought this action seeking a declaratory judgment that a certain irrevocable trust was void ab initio and unenforceable, and that any and all assets transferred from E's estate into the trust be returned to the estate. The Probate Court previously had granted E's request for the voluntary appointment of a conservator of her person and estate. The defendant S, the former conservator of E's estate, had entered into an asset protection services agreement on E's behalf with an affiliate of the defendant F Co. Thereafter, the trust was formed to hold E's assets, which were transferred from E's conservatorship estate to the trust. After S resigned, the plaintiff was appointed coconservator of E's estate for the limited purpose of matters relating to E's interest in the trust, and this action followed. The trial court granted the plaintiff's motion for summary judgment, declaring that the trust was void ab initio and unenforceable, and ordering that the assets that were transferred be returned to E's estate. From the judgment rendered thereon, F Co. appealed to this court. F Co. claimed, inter alia, that the plaintiff had no standing pursuant to the conservatorship statute (§ 45a-655) to initiate the present matter on behalf of E's estate. *Held:*

1. The plaintiff had statutory standing to bring the declaratory judgment action on behalf of E's conservatorship estate; a conservator of the estate has such power as is expressly or impliedly given to her pursuant to § 45a-655, which provides that the conservator of the estate may bring an action for and collect all debts due to the conserved person, a conservator is not required to obtain Probate Court approval prior to commencing an action on behalf of the ward if that power is a necessary implication of § 45a-655 (a), which grants to conservators the necessary power to commence litigation where such a course is necessarily implied by a conservator's duty to manage the ward's affairs, the legislature has not included language requiring Probate Court approval in § 45a-655 (a) when discussing a conservator's ability to initiate an action on behalf of a conserved person, the power of conservators of the estate to initiate an action on behalf of a conserved person has been broadly interpreted, and, thus, although § 45a-655 (a) does not expressly provide that a conservator may initiate a declaratory judgment action questioning the validity of a trust created without the former conservator having obtained Probate Court approval, such power is reasonably implied from the statute and from case law.

2. F Co. could not prevail on its claim that the trial court erred in rendering summary judgment in the absence of a necessary party, B Co., which was based on its claim that B Co., as the sole trustee of the trust, held legal title to the assets in the trust and, thus, had to be joined as a necessary party to this action: no statute mandates the naming and serving of a putative trustee, F Co. failed to show that the failure of the plaintiff or the court to join B Co. as a party infringed on the due process rights of B Co., which had knowledge of this action and chose not to intervene, and in light of the prayer for relief, the issue before the trial court concerned the validity of the trust and did not involve the trustee protecting any wrongful interference with the trust's assets, and, therefore, the presence of B Co., which did not have possession of the assets of the trust, in this action involving the validity of the trust due to the conservator's failure to obtain Probate Court approval was not absolutely required in order to assure a fair and equitable trial; moreover, B Co.'s interests were aligned sufficiently with that of F Co., which as the protector of the trust, had the duty to manage and the power to remove the trustee under the terms of the trust, and the trial court having determined that there was no genuine issue of material fact that the trust was void ab initio, B Co. did not have an interest in a trust that never lawfully existed and, thus, did not have power to transfer

the assets.

3. F Co.'s claim that the trial court erred when it concluded that E lacked the ability to execute the trust while under a voluntary conservatorship was unavailing: a voluntary conserved person does not retain control over her estate, as the clear language of § 45a-655 gives control over the estate to the conservator, and contrary to F Co.'s claim that the 2007 revision of the conservatorship statutes suggests that a voluntary conserved person retains control over her estate, the amendment does not alter the power and duties of the conservator but, rather, establishes the method through which a conservator must carry out her statutory duties, and to interpret the statutory revision to eliminate the responsibilities a conservator has with respect to a conserved person's estate could effectively negate the powers and duties given to conservators in § 45a-655, which would run afoul of the principle of statutory construction that the legislature does not intend to enact meaningless provisions; moreover, it would make meaningless the Probate Court's granting of an application for a voluntary conservator to permit a duality of control over assets due to the confusion that can be sown when a conservator and a voluntary conserved person take conflicting action with respect to the same asset, especially given that a voluntarily conserved person may seek to be released from the voluntary conservatorship; accordingly, no genuine issue of material fact existed that E lacked the legal capacity to form the trust, and the trial court, therefore, properly determined that no genuine issue of material fact existed that the trust was void ab initio.

Argued September 6—officially released December 11, 2018

*Procedural History*

Action for a judgment declaring, inter alia, a certain trust void ab initio and unenforceable, and for other relief, brought to the Superior Court in the judicial district of Stamford, where the court, *Heller, J.*, granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the defendant First State Fiduciaries, LLC, appealed to this court. *Affirmed.*

*James G. Green, Jr.*, with whom were *Jeffrey A. Dorman* and, on the brief, *Robert J. Mauceri*, for the appellant (defendant First State Fiduciaries, LLC).

*Bridgitte E. Mott*, with whom was *Richard E. Castiglioni*, for the appellee (plaintiff).

*Opinion*

FLYNN, J. The principal issue in this case is whether a settlor of a revocable trust who is later under a voluntary conservatorship may, while under conservatorship, acting on her own behalf, convert the trust to an irrevocable trust without action by her conservator and without her conservator obtaining Probate Court approval. The defendant, First State Fiduciaries, LLC,[1] appeals from the judgment of the Superior Court granting the motion of the plaintiff, Margaret E. Day, coconservator of the estate of Susan D. Elia, for summary judgment and declaring that the Susan D. Elia Irrevocable Trust dated September 15, 2011 (Delaware irrevocable trust) was void ab initio and unenforceable, and that all transfers of assets from Elia's conservatorship estate to the Delaware irrevocable trust or its wholly owned limited liability company, Peace at Last, LLC, were unauthorized and improper and ordering that the assets from Elia's conservatorship estate that were transferred to the Delaware irrevocable trust to Peace at Last, LLC,[2] shall be immediately returned to Elia's conservatorship estate.

On appeal, the defendant claims that the court erred in granting the plaintiff's motion for summary judgment in the absence of an indispensable party, Bryn Mawr Trust Company of Delaware (Bryn Mawr).[3] We conclude that the court properly determined that Elia could not lawfully replace the Connecticut revocable trust with the Delaware irrevocable trust while under a conservatorship. We also conclude that the court properly determined that the former conservator of Elia's estate, Renee F. Seblatnigg, could not transfer the assets of the conservatorship estate to the Delaware irrevocable trust and that this transfer was void ab initio. Finally, we conclude that Bryn Mawr was not an indispensable party. We affirm the judgment of the trial court.

On January 18, 2014, the plaintiff initiated the present action in which she sought a declaratory judgment that (1) the Delaware irrevocable trust was void ab initio and unenforceable; and (2) any and all assets transferred from Elia's estate to the Delaware Irrevocable Trust or to an entity owned by the Delaware Irrevocable Trust be returned to the estate.[4] The following procedural history relates to the issues now on appeal. On February 26, 2015, the plaintiff moved for summary judgment.

In its memorandum of decision, the Superior Court set forth the following undisputed material facts. "Elia is seventy-one years old. She suffers from advanced Parkinson's disease and lung cancer. In June, 2011, Elia applied to the Greenwich Probate Court for the voluntary appointment of a conservator of her person and her estate. Following a June 28, 2011 hearing in the Greenwich Probate Court, at which the court, *Hopper*,

*J.*, saw Elia in person, heard her reason for seeking voluntary representation, and explained to her that appointing a conservator as requested would subject her and her property to the authority of the conservator, the court found that Elia resided or had domicile in the Greenwich Probate District, that the court had jurisdiction, that Elia had requested the appointment of a conservator of the person and the estate, and that the proposed conservators had accepted the position of trust. The Greenwich Probate Court accordingly granted Elia's application for voluntary representation. By decree issued on June 28, 2011 . . . the court appointed Seblatnigg the conservator of Elia's estate and Richard DiPaola . . . the conservator of Elia's person.

"The June 28, 2011 decree provided that Seblatnigg, as the conservator of Elia's estate, had the power to manage the estate, to apply estate funds to support Elia, to pay her debts, and to collect debts due to her. At the time of Seblatnigg's appointment as conservator of Elia's estate, Elia owned or held an equitable interest in cash and securities valued in excess of $6,000,000, including those held in the Susan D. Elia Revocable Trust, a 2007 revocable trust governed by Connecticut law (the Connecticut revocable trust).

"In September, 2011, Seblatnigg consulted with the managers of First State Fiduciaries, [Attorney] Robert Mauceri . . . and [Attorney] James Holder . . . regarding the creation of an asset protection plan for Elia. They recommended to Seblatnigg that Elia establish and fund a self-settled irrevocable Delaware asset protection trust and a limited liability company, to be owned by the trust, to hold her assets.

"Seblatnigg, as conservator of Elia's estate, entered into an asset protection services agreement on Elia's behalf with First State Facilitators, LLC (First State Facilitators), an affiliate of First State Fiduciaries, on September 15, 2011. Seblatnigg, as conservator, also signed a legal representation agreement on behalf of Elia with Mauceri. On the same day, Seblatnigg met with Elia and supervised her execution of the instrument that created the Delaware irrevocable trust. The trust instrument named Seblatnigg and Salvatore Mulia . . . as the independent trustees of the Delaware irrevocable trust and named First State Fiduciaries as the protector of the Delaware irrevocable trust. Seblatnigg did not seek or obtain the approval of the Greenwich Probate Court to establish the Delaware irrevocable trust or to advise Elia to execute the trust instrument.

"A Delaware limited liability company, Peace at Last . . . wholly owned by the Delaware irrevocable trust, was formed on September 15, 2011, to hold Elia's assets. Beginning on September 20, 2011, Seblatnigg directed the transfer of more than $6,000,000 in cash and securities from Elia's conservatorship estate and the Connect-

icut revocable trust to the Delaware irrevocable trust or to Peace at Last. Seblatnigg did not seek or obtain the approval of the Greenwich Probate Court before she transferred the assets to the [Susan D. Elia Irrevocable Trust dated September 15, 2011 (Delaware irrevocable trust)] . . . or to Peace at Last.

"Seblatnigg resigned as the conservator of Elia's estate on April 5, 2013. The Greenwich Probate Court accepted Seblatnigg's resignation on May 21, 2013, subject to the allowance of her final account, and appointed Mulia the successor conservator of Elia's estate.

"The Greenwich Probate Court appointed the plaintiff the coconservator of Elia's person on May 23, 2013. On January 9, 2014, at Elia's request, the Greenwich Probate Court issued a decree . . . naming the plaintiff the coconservator of Elia's estate for the limited purpose of any matters relating to Elia's interest in the Delaware irrevocable trust, because Mulia had a possible conflict of interest.

"In March 2014, shortly after the plaintiff commenced this declaratory judgment action, First State Fiduciaries filed a petition in the Delaware Court of Chancery (Delaware action) in which it sought an order compelling Morgan Stanley Smith Barney, LLC (Morgan Stanley), which held the assets of the Delaware irrevocable trust, to transfer the trust assets to the purported new sole trustee, the Bryn Mawr Trust Company of Delaware . . . . Morgan Stanley filed an answer and counterpetition in the nature of an interpleader, in which it maintained that it had no interest in the trust assets, on May 19, 2014.

"On May 16, 2014, the plaintiff moved to intervene in the Delaware action. The motion to intervene was granted on June 10, 2014. The plaintiff filed a response, counterclaim, and third-party complaint in the Delaware action that day. On January 29, 2015, the plaintiff moved for a protective order and to stay discovery in the Delaware action. Morgan Stanley joined in the plaintiff's motion to stay the Delaware action.

"On February 13, 2015, a special master in the Delaware action recommended that the court deny First State Fiduciaries' motion to compel and grant the plaintiff's motion for a protective order and a stay of any discovery. In a letter to counsel dated August 4, 2015, the special master indicated that she was recommending that the court stay the Delaware action in its entirety." (Footnotes omitted.)

The court granted the plaintiff's motion for summary judgment. The court determined that "[n]o genuine issue of material fact exists as to whether Elia was under a voluntary conservatorship at the time she executed the instrument creating the Delaware irrevocable trust. While Seblatnigg, as conservator, could have created and funded the Delaware irrevocable trust with

the Greenwich Probate Court's approval, she chose instead to do so without the court's authorization" in violation of General Statutes § 45a-655 (e).[5] The court ruled that "[u]ntil such time [as Elia sought and obtained release from the conservatorship pursuant to General Statutes § 45a-647] . . . the conservator, as the agent of the Probate Court [had] the exclusive authority to manage the affairs of the conserved person." The court concluded that the Delaware irrevocable trust was void ab initio. In addressing an issue of joinder raised by the defendant in its memorandum in opposition to the plaintiff's motion for summary judgment, the court concluded that Bryn Mawr was not a necessary party to the action. This appeal followed.

We first set forth the relevant standards that generally govern our review of a court's decision to grant a motion for summary judgment. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 312–13, 77 A.3d 726, 731 (2013). Having set forth the relevant standard of review, we now turn to the defendant's claims on appeal.

I

We begin by addressing the defendant's jurisdictional claim that the court improperly concluded that the plaintiff had standing to commence this declaratory judgment action on behalf of Elia's conservatorship estate.[6] "The issue of standing implicates the trial court's subject matter jurisdiction and therefore presents a threshold issue for our determination." *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 518, 970 A.2d 583 (2009). The defendant argues that the plaintiff lacks standing to bring the action because she failed to obtain Probate Court approval to initiate the action pursuant to General Stat-

utes § 45a-655 (a). We disagree.

"[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary. . . .

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Citations omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 213–15, 982 A.2d 1053 (2009).

At issue is the plaintiff's standing to initiate the underlying action. The plaintiff was not the initial conservator of Elia's estate, but rather was appointed by the Probate Court in January, 2014, as coconservator of Elia's estate "for the limited purpose" of matters relating to Elia's interest in the Delaware irrevocable trust. The defendant contends that the plaintiff lacks standing because she failed to obtain Probate Court approval to initiate the declaratory judgment action and that § 45a-655 (a) authorizes only debt collection actions, which the declaratory judgment action is not. We disagree.

The defendant misinterprets the language of § 45a-655 (a). That section permits a conservator of the estate to sue on behalf of the conserved person. General Statutes § 45a-655 (a) lists the duties of the conservator of the estate, whether voluntarily or involuntarily appointed, and provides that a conservator of the estate "shall manage all the estate . . . and may sue for and collect all debts due to the conserved person." "Property management" is defined in General Statutes § 45a-644 (j) as "actions to (1) obtain, administer, manage, protect and dispose of real and personal property, intangible property, business property, benefits and income, and (2) deal with financial affairs." The plaintiff was specifically appointed to deal with matters relating to Elia's interest in the Delaware irrevocable trust.

A conservator is not required to obtain Probate Court approval prior to commencing suit on behalf of the ward if that power is a necessary implication of § 45a-655 (a). See *Doyle* v. *Reardon*, 11 Conn. App. 297, 527 A.2d 260 (1987). In *Doyle*, this court held that Probate Court permission was not necessary to engage the services of an attorney to investigate a conveyance of real estate from the ward to the plaintiff prior to the appointment of an involuntary conservator. Id., 302–303. The court interpreted General Statutes § 45-75, now § 45a-655, and prior case law, to mean that Probate Court approval is not required in order for the conservator to bring suit, but rather, if "prior permission to bring suit is not sought, the conservator proceeds at his peril in terms of recouping the expenses of such a suit, in the event he engages the services of an attorney to prosecute the action." Id., 301. Accordingly, we read *Doyle* to mean that failure to obtain Probate Court approval may affect a conservator's ability to recoup litigation expenses, but does not impact her ability to initiate suit in that or analogous matters unless prior approval is specifically required by statute.

Consistent with our decision in *Doyle*, we construe the statutory scheme adopted by our legislature in enacting § 45a-655 (a) to grant to conservators the necessary power to commence litigation where such a course is necessarily implied by a conservator's duty to manage the ward's affairs. That statutory scheme sets forth certain actions where prior Probate Court approval is required before certain actions are permitted by a conservator. For example, in § 45a-655 (e), the legislature clearly provides that conservators must obtain Probate Court approval prior to taking certain actions. That section provides: "*[u]pon application of a conservator of the estate*, after hearing with notice . . . *the court may authorize* the conservator to make gifts or other transfers of income and principal from the estate of the conserved person" provided certain factors are satisfied. (Emphasis added.) General Statutes § 45a-655 (e). The legislature clearly knew how to

require the conservator to obtain prior Probate Court approval when it wanted to do so. Significantly, the legislature did not include language requiring Probate Court approval in § 45a-655 (a) when discussing a conservator's ability to initiate suit on behalf of a conserved person. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003).

We conclude that the plaintiff has statutory standing to bring the declaratory judgment action because a conservator of the estate has such power as is "expressly or impliedly given to [her] by [§ 45a-655]." (Internal quotation marks omitted.) *Luster* v. *Luster*, 128 Conn. App. 259, 270, 17 A.3d 1068, cert. granted, 302 Conn. 904, 23 A.3d 1243 (2011) (appeal dismissed April 12, 2012). The power of conservators of the estate to initiate suit on behalf of a conserved person has been broadly interpreted. "In Connecticut, there are many examples in our case law of conservators bringing suit on behalf of their wards to protect their interests." Id., 272–73. Although § 45a-655 (a) does not expressly provide that a conservator may initiate a declaratory judgment action questioning the validity of a trust created by a voluntarily conserved person and created without the former conservator having obtained Probate Court approval, such power is reasonably implied from § 45-655 (a) and from case law. See *Doyle* v. *Reardon*, supra, 11 Conn. App. 297.

## II

We next turn to the defendant's claim that the court erred in rendering summary judgment in the absence of a necessary party, Bryn Mawr, the putative trustee of the Delaware irrevocable trust.[7] We disagree.

In its opposition to the plaintiff's motion for summary judgment, the defendant argued that Bryn Mawr, as trustee of the Delaware irrevocable trust, was a necessary party. In its memorandum of decision, the court rejected this argument and reasoned that Bryn Mawr is not a necessary party to the court's determination of whether the Delaware irrevocable trust was void ab initio.

"Necessary parties . . . are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by

adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. . . . A party is deemed necessary if its presence is absolutely required in order to assure a fair and equitable trial. . . . The decision whether to grant a motion for the addition of a party to pending legal proceedings rests generally in the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *In re Devon B.*, 264 Conn. 572, 579–81, 825 A.2d 127 (2003).

"It is well settled that the failure to join an indispensable party does not deprive a trial court of subject matter jurisdiction. See General Statutes § 52-108 and Practice Book §§ 9-18 . . . . [T]he failure to join an indispensable party results in a jurisdictional defect *only if* a statute mandates the naming and serving of [a particular] party. . . . Conversely, when a party is indispensable but is not required by statute to be made a party, the [trial] court's subject matter jurisdiction is not implicated and dismissal is not required. . . . Although a court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome, the absence of such a party does not destroy jurisdiction."[8] (Citations omitted; emphasis in original; internal quotation marks omitted.) *General Linen Service Co.* v. *Cedar Park Inn & Whirlpool Suites*, 179 Conn. App. 527, 532–33, 180 A.3d 966 (2018).

The defendant argues that subject matter jurisdiction is implicated and that the joinder of Bryn Mawr as a necessary party is mandated because Bryn Mawr is the current sole trustee of the Delaware irrevocable trust and, as such, holds legal title to the assets in the trust. The defendant contends that Bryn Mawr alone has the power to transfer those assets out of the trust in the event that this court affirms the trial court's decision that the Delaware irrevocable trust is void ab initio.

We first conclude that no statute mandates the naming and serving of a putative trustee and, accordingly, joinder of Bryn Mawr is not so mandated by statute in this case. Furthermore, the defendant has not shown that the plaintiff's or the court's failure to join Bryn Mawr as a party infringes on Bryn Mawr's due process rights. See *Wells Fargo Bank, N.A.* v. *Treglia*, 156 Conn. App. 1, 16 n.6, 111 A.3d 524 (2015) ("[j]oinder of a necessary party is mandatory when that party's due process rights are implicated in the action"). Bryn Mawr is a party to the Delaware action during which the Connecticut litigation was discussed, and the Delaware proceedings were stayed pending a final judgment in

this Connecticut action. Bryn Mawr, therefore, had knowledge of the Connecticut litigation and chose not to intervene. A substitute trustee of an irrevocable trust that was void at its creation has not been deprived of due process rights by failure to be joined as a party. Furthermore, the defendant, First State Fiduciaries, which is a party because of its common interest, can adequately represent Bryn Mawr's interest in this action.

We next determine, in the absence of a statute mandating joinder, whether the trial court can "proceed to a decree, and do complete and final justice" without Bryn Mawr joined in the declaratory judgment action. *In re Devon B.*, supra, 264 Conn. 579-81. The following law on trustees is informative. "[A]s a general rule, the trustee is a proper person to sue or be sued on behalf of a trust. . . . The trustee is the legal owner of trust property, and as such the trustee is the proper party to actions affecting title to trust property. Thus, a trustee is a necessary party to any suit or proceeding involving a disposition of trust property or funds." (Citations omitted; internal quotation marks omitted.) *Bank of New York* v. *Bell*, 142 Conn. App. 125, 133 n.5, 63 A.3d 1026, cert. denied, 310 Conn. 901, 75 A.3d 30 (2013), and cert. denied, 310 Conn. 901, 75 A.3d 31 (2013). "The trustee has a title (generally legal title) to the trust property, usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe." (Internal quotation marks omitted.) *Naier* v. *Beckenstein*, 131 Conn. App. 638, 646, 27 A.3d 104, cert. denied, 303 Conn. 910, 32 A.3d 963 (2011).

The undisputed evidence in this case demonstrates that a question existed in the Delaware action as to whether Bryn Mawr properly was appointed trustee of the Delaware irrevocable trust. The defendant filed a petition in the Delaware action seeking an order compelling Morgan Stanley to transfer the trust assets to Bryn Mawr. Morgan Stanley filed an interpleader in the Delaware action, in which Morgan Stanley stated that it had not transferred the assets to Bryn Mawr because the defendant had not produced evidence sufficient to establish that Bryn Mawr was the duly appointed trustee of the trust. The Delaware Court of Chancery appointed a special master to oversee the assets of the Delaware trust, and the special master was given authority to execute the documents necessary to transfer the trust assets to the Wilmington Trust Company, the new custodian. The defendant's counsel conceded at oral argument before this court that the possession of the assets at issue is currently with the Delaware Chancery Court, which has stayed the action before it, pending a final judgment in this action.

In her prayer for relief, the plaintiff sought a declara-

tory judgment that the Delaware irrevocable trust be declared void ab initio and sought the relief that "any and all assets transferred to the trust or any entity owned by the trust be returned to the conservatorship estate from whence it came." The issue before the trial court did not involve the trustee protecting any wrongful interference with the trust assets, rather the issue before the court was the validity of the trust. The presence of Bryn Mawr, which entity does not now have possession of the trust assets, in an action involving the validity of the trust due to the conservator's failure to obtain Probate Court approval, is not absolutely required in order to assure a fair and equitable trial. Furthermore, Bryn Mawr's interests are aligned sufficiently with that of the defendant, which, as the protector of the Delaware irrevocable trust, had the duty to manage and the power to remove the trustee under the terms of the trust.

The trial court concluded, and we agree, that there is no genuine issue of material fact that the Delaware irrevocable trust was void ab initio. Bryn Mawr does not have an interest in a trust that never lawfully existed, and, accordingly, does not have the power to transfer the assets, which are not currently in its possession. Accordingly, the court properly determined that there was no genuine issue of material fact that Bryn Mawr was not a necessary party in this action.

### III

The defendant next claims that the court erred when it concluded that Elia lacked the ability to execute the Delaware irrevocable trust while under a voluntary conservatorship. We disagree.

The court determined that there was no genuine issue of material fact that Elia was under a voluntary conservatorship at the time she executed the instrument, which identified her as the grantor, creating the Delaware irrevocable trust.[9] The court determined, as a matter of law, that Elia did not have the capacity to form the Delaware irrevocable trust because she was voluntarily conserved at the time.

The issue before us concerns a voluntary conservatorship of the estate. Unlike an involuntary conservatorship wherein the Probate Court must find that the respondent is "incapable of managing his or her affairs or is incapable of caring for him or herself"; General Statutes § 45a-644 (e); the Probate Court, when granting an application for a voluntary conservatorship, does not make a finding that the voluntarily conserved person is incapable of managing her affairs. See General Statutes § 45a-644 (g).

A "conservator of the estate" is defined in § 45a-644 (a) as "a person . . . appointed by the Court of Probate . . . to supervise the financial affairs of a person found to be incapable of managing his or her own affairs or

of a person who voluntarily asks the Court of Probate for the appointment of a conservator of the estate." The statutory duties of a conservator of the estate, whether voluntarily or involuntarily appointed, "are clearly defined in General Statutes § 45a-655 . . . A conservator of the estate shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward and those members of the ward's family whom he or she has the legal duty to support and to pay the ward's debts . . . ." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 539–40, 778 A.2d 93 (2001). "In general terms, a conservator of the estate is required to manage the conservatee's estate for the benefit of the conservatee . . . ." *Gross* v. *Rell*, 304 Conn. 234, 250–51, 40 A.3d 240 (2012). "A conservator has an implied power to enter into contracts on behalf of [her] ward's estate where such contracts involve the exercise of the express or implied powers which are granted to the conservator by statute." *Elmendorf* v. *Poprocki*, 155 Conn. 115, 118, 230 A.2d 1 (1967).

The conservatorship statutes have been revised in 2007 to reflect that a conservator is to manage an estate in the least restrictive means possible. Section 45a-655 (a), which lists the duties of voluntary and involuntary conservators of the estate, provides that: "The conservator shall use the least restrictive means of intervention in the exercise of the conservator's duties and authority." Section § 45a-644 (k) defines "least restrictive means of intervention" as a "means of intervention for a conserved person that is sufficient to provide, within the resources available to the conserved person either from the conserved person's own estate or from private or public assistance, for a conserved person's personal needs or property management while affording the conserved person the greatest amount of independence and self-determination." Our Supreme Court stated in *Kortner* v. *Martise*, 312 Conn. 1, 57, 91 A.3d 412 (2014), that "[t]he current statutory scheme governing conservatorships and its historical development make it abundantly clear that the legislature intends for conserved persons to retain as much decision-making authority and independence as possible, and that a conservator's role should be limited so as to accomplish that objective. Indeed, the fact that a conservator is appointed does not mean that the conserved person loses all of his or her civil rights. Rather, the conservator is to manage the conserved person's affairs through the least restrictive means possible."

However, the 2007 revision does not mean, as the defendant suggests, that a voluntarily conserved person retains control over her estate. The statutory amendment, which requires that a conservator carry out her

duties using the least restrictive means possible, does not alter the power and duties of a conservator. Rather, it establishes the method through which a conservator must carry out her statutory duties. To interpret this statutory revision to eliminate the responsibilities a conservator has with respect to a conserved person's estate could effectively negate the powers and duties given to conservators in § 45a-655. This would run afoul of the principle of statutory construction that the legislature does not intend to enact meaningless provisions. See *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433–34, 994 A.2d 1265 (2010).

The clear language of § 45a-655 gives control over the estate to the conservator, and provides that the "conservator shall manage all the estate." General Statutes § 45a-655. It is inconsistent with the language of § 45a-655 and the filing of an application for a voluntary conservatorship pursuant to General Statutes § 45a-646, for an involuntarily conserved person to retain control over the estate. Such a result would make meaningless the words of the statutes. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) Id., 433. "Because no finding of incapacity is reached when applications for voluntary conservatorships are granted, and because the enabling statute is silent, it is not clear to what extent persons so represented remain legally capable to contract, convey title, or have charge of their persons. Retention of legal capacities of this kind would appear inconsistent with the purposes of voluntary representation." R. Folsom & G. Wilhelm, Connecticut Estates Practice Series: Incapacity, Powers of Attorney & Adoption in Connecticut (3d Ed. 2018) § 2:8, p. 129. Consistent with this notion, § 45a-646 provides, in relevant part, that the court, upon hearing a respondent's application for a voluntary conservatorship, is to explain "to the respondent that granting the petition will subject the respondent or respondent's property, as the case may be, to the authority of the conservator . . . ."

In contrast to an involuntary conservatorship, a voluntarily conserved person may seek to be released from the voluntarily conservatorship, thereby regaining control of her estate. General Statutes § 45a-647 provides: "Any person who is under voluntary representation as provided by section 45a-646 shall be released from voluntary representation upon giving thirty days' written notice to the Court of Probate." Accordingly, a person voluntarily may file an application to have a conservator

control her estate; see General Statutes § 45a-646; and a voluntarily conserved person may also seek to regain control of her estate. See General Statutes § 45a-647. It would make meaningless the Probate Court's granting of an application for a voluntary conservator to permit a duality of control over assets due to the confusion that can be sown when a conservator and a voluntarily conserved person take conflicting action with respect to the same asset. Section 45a-647 makes such conflict unnecessary by permitting a voluntarily conserved person to be released from voluntary representation by giving thirty days written notice; it contemplates a legal procedure that would remove a conservator at the option of the person conserved, thereby avoiding potential conflicts between an action taken by a conservator and an opposing action taken by a voluntarily conserved person.

Because a voluntarily conserved person does not retain control over her estate, no genuine issue of material fact existed that Elia lacked the legal capacity to form the Delaware irrevocable trust. Accordingly, we conclude that the court properly determined that no genuine issue of material fact existed that the Delaware irrevocable trust was void ab initio.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The complaint also named as defendants Renee F. Seblatnigg, sole independent trustee and former conservator of the Susan D. Elia Irrevocable Trust dated September 15, 2011; Edward E. Pratesi; Harry D. Lewis; Susan D. Elia; Marc W. Elia, as guardian of minor children Alden H. Elia, Ryder C. Elia, and Schuyler H. Elia; Christine E. Elia, as guardian of minor child Ennio Barry Simon; Attorney General George Jepsen; Sarah Wilbur Day; Matthew Lewis Striplin; Samuel Bowden Striplin; and Suzanne Palazzi Day. The claims against Seblatnigg, Lewis and Pratesi were withdrawn. The court granted the motions for default as to Marc Elia, Matthew Striplin, Samuel Striplin, Sarah Day, and Suzanne Day. First State Fiduciaries, LLC, alone filed the present appeal. Accordingly, we will refer to First State Fiduciaries, LLC, as the defendant.

[2] By agreement of the parties and with the approval of the Delaware Court of Chancery, these assets were transferred to an account at the Wilmington Trust Company.

[3] The defendant, in its "Memorandum in Opposition to Plaintiff's Motion for Summary Judgment," raised for the first time the issue that Bryn Mawr was not joined in the action and is a necessary party. On September 3, 2015, the defendant filed a motion to strike arguing that Bryn Mawr was a necessary party, which motion was not ruled on by the court. In its memorandum of decision on the plaintiff's motion for summary judgment, the court addressed the issue of joinder.

[4] The court ordered that the assets that were transferred to the Delaware irrevocable trust be returned to Elia's conservatorship estate. No claim was made on appeal that the assets should be returned to the Connecticut revocable trust rather than to Elia's conservatorship estate.

[5] General Statutes § 45a-655 (e) provides in relevant part: "Upon application of a conservator of the estate, after hearing with notice to the Commissioner of Administrative Services, the Commissioner of Social Services and to all parties who may have an interest as determined by the court, the court may authorize the conservator to make gifts or other transfers of income and principal from the estate of the conserved person in such amounts and in such form, outright or in trust, whether to an existing trust or a court-approved trust created by the conservator, as the court orders to or for the benefit of individuals, including the conserved person, and to or for the benefit of charities, trusts or other institutions . . . . Such gifts

or transfers shall be authorized only if the court finds that . . . (3) the estate of the conserved person and any proposed trust of which the conserved person is a beneficiary is more than sufficient to carry out the duties of the conservator as set forth in subsections (a) and (b) of this section, both for the present and foreseeable future, including due provision for the continuing proper care, comfort and maintenance of such conserved person in accordance with such conserved person's established standard of living and for the support of persons the conserved person is legally obligated to support . . . . The court shall give consideration to the following: (A) The medical condition of the conserved person, including the prospect of restoration to capacity; (B) the size of the conserved person's estate; (C) the provisions which, in the judgment of the court, such conserved person would have made if such conserved person had been capable, for minimization of income and estate taxes consistent with proper estate planning; and (D) in the case of a trust, whether the trust should be revocable or irrevocable, existing or created by the conservator and court approved."

[6] The defendant raised the issue of standing in its motion in opposition to the plaintiff's motion for summary judgment, and the court addressed that issue in its memorandum of decision. The defendant raised the issue of standing before this court for the first time in its reply brief. Although arguments raised for the first time in reply briefs are disfavored, we will review the issue because it implicates subject matter jurisdiction. See *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005) (issues of subject matter jurisdiction may be raised at any time).

[7] The defendant raised for the first time at oral argument before this court the issue that Peace at Last, LLC, is a necessary party. The defendant has not directed us to any statute, nor are we aware of any, that mandates that a company that had title to a trust asset in a trust declared to be void ab initio, is a necessary party to a declaratory judgment action such as this one. Because Peace at Last, LLC, does not have a statutory right to intervene, subject matter jurisdiction is not implicated, and the claim may not be raised at any time. See *General Linen Service Co.* v. *Cedar Park Inn & Whirlpool Suites*, 179 Conn. App. 527, 532–33, 180 A.3d 966 (2018) (failure to join indispensable party results in jurisdictional defect only if statute mandates naming and serving of particular party). Because the issue was raised for the first time during oral argument and does not implicate subject matter jurisdiction, we conclude that the issue has not been properly briefed and decline to consider it. It is well established that arguments raised for the first time at oral argument are not reviewable. See *Alexandre* v. *Commissioner of Revenue Services*, 300 Conn. 566, 586 n.17, 22 A.3d 518 (2011).

[8] "In the past, there had been a distinction between 'necessary' and 'indispensable' parties. See *Shields* v. *Barrow*, 58 U.S. (17 How.) 130, 139, 15 L. Ed. 158 (1855) (defining both terms). Over time, however, this distinction has become less pronounced; see *Sturman* v. *Socha*, 191 Conn. 1, 6, 463 A.2d 527 (1983) (recognizing that misleading nature of terms 'has resulted in a blurring of the distinction typically drawn between them'); and provisions of our Practice Book and General Statutes currently refer only to necessary parties. See, e.g., Practice Book §§ 9-6 and 9-24; General Statutes §§ 8-8 (f) and 12-638n." *In re Devon B.*, supra, 264 Conn. 580 n.12.

[9] The defendant argues that a genuine issue of material fact exists as to whether Seblatnigg created the Delaware irrevocable trust. The defendant contends that the trust indenture establishes that Elia signed the trust as grantor, thereby creating the Delaware irrevocable trust. The defendant directed our attention to the affidavits of Seblatnigg and Robert Mauceri, both of whom were with Elia when she executed the Delaware irrevocable trust. Seblatnigg stated in her affidavit that Elia created the Delaware irrevocable trust, and Mauceri explained that Elia "exhibited complete comprehension and subtle wit."

The court concluded that there was "no genuine issue of material fact as to whether Elia was under a voluntary conservatorship at the time she executed the instrument creating the Delaware irrevocable trust." Although not a model of clarity, the court determined that "Seblatnigg, as conservator, could have created and funded the Delaware irrevocable trust with the Greenwich Probate Court's approval, she chose instead to do so without the court's authorization." The court clarified that the use of the term "created," with respect to Seblatnigg was referencing an asset protection services agreement with First State Facilitators and a legal representation agreement with Mauceri, on Elia's behalf. It is important to note that the court's principal conclusion that unless Elia sought and obtained release from the conservatorship pursuant to § 45a-647, the conservator, as the agent of the Probate

Court, had exclusive authority to manage Elia's affairs.

The court determined that there was no genuine issue of material fact that Elia executed the instrument creating the Delaware irrevocable trust, and the defendant has not directed us to any evidence in the record, nor are we aware of any that creates an issue of material fact as to this issue.

[10] The defendant also argues that a genuine issue of material fact exists as to whether Seblatnigg was acting in her role as conservator of the estate, or as cotrustee of the Connecticut revocable trust, when she transferred assets from the Connecticut revocable trust to the Delaware irrevocable trust, and whether conservatorship assets were transferred into the new Delaware trust. This is not a material fact. The defendant acknowledges that Elia signed the trust as grantor and, thereby, created the Delaware irrevocable trust. However, a voluntarily conserved person does not retain the power to manage his or her own property unless the conserved person terminates the voluntary conservatorship pursuant to § 45a-647.

The defendant also claims that the court erred when it held that assets legally titled to the Connecticut revocable trust form part of the conservatorship estate. The defendant's claim regarding the role Seblatnigg acted under implicates the issue before the trial court of whether, pursuant to § 45a-655, Seblatnigg was required to obtain Probate Court approval for the creation and transferring of assets to the Delaware irrevocable trust. Whether Seblatnigg was required to obtain Probate Court approval is not a question we need to resolve. In the absence of Probate Court approval, whether required or not, what remains is a voluntarily conserved individual executing the Delaware irrevocable trust instrument. As a result, the trust that the conserved person created is void ab initio, and the remaining issues need not be resolved on appeal.

---