******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# PATRICK RIDER *v.* BRIAN RIDER, EXECUTOR (ESTATE OF LEIGH RIDER), ET AL.
## (AC 42570)

DiPentima, C. J., and Lavine and Elgo, Js.*

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dismissing for lack of subject matter jurisdiction an action he brought against the defendants in which he sought to claim ownership of a campground unit that had been sold to A Co. by B, the conservator and executor of the estate of R. The plaintiff alleged that, in 2009, after R and R's wife had agreed to transfer the unit to him, he learned that the deed that was to transfer ownership to him had not been recorded and that A Co. and C Co. had potential ownership claims to the unit. In 2014, the plaintiff filed a voluntary bankruptcy petition but did not list the unit as property of his estate. In 2017, the plaintiff recorded a lis pendens and commenced an action to quiet title to the unit. In June, 2017, R petitioned the Probate Court for a voluntary conservatorship of his estate and person. The Probate Court granted R's petition and appointed B as conservator of R's estate and person. B, as conservator, executed a deed that conveyed the unit to A Co., which was approved by the Probate Court. The plaintiff alleged that the defendants H and P had witnessed the deed and were aware of his 2017 action. The Probate Court ended the voluntary conservatorship the next day, and the deed for the unit was recorded in the land records that same day. The plaintiff did not file an appeal to challenge any of the Probate Court's actions. Thereafter, in October, 2017, R agreed to quitclaim title to the unit to the plaintiff in exchange for his withdrawal of the 2017 action. A Co. then informed the plaintiff that it owned the unit. The trial court granted the motions to dismiss that were filed by B, C Co., H and P, concluding that it lacked subject matter jurisdiction because the plaintiff lacked standing as a result of his failure to disclose in the bankruptcy proceeding his interest in the unit. The court determined that, as a result of that failure, the plaintiff's claim to the unit belonged to the bankruptcy trustee, who was not a party to the plaintiff's action against the defendants. On appeal, the plaintiff claimed that the trial court improperly concluded that he lacked standing and that, because the Probate Court lacked statutory (§ 45a-646) authority to appoint B as conservator, all subsequent proceedings in the Probate Court were void ab initio. *Held*:

1. This court would not consider the plaintiff's collateral challenge to the subject matter jurisdiction of the Probate Court: the plaintiff's claim, which he raised, for the first time, on appeal to this court, that the Probate Court lacked authority under § 45a-646 to appoint B as conservator, was based on certain letters that related to B's appointment as conservator, which the Probate Court did not address in its decrees and for which there is no evidence that the Probate Court received; moreover, the plaintiff did not set forth any reason why he should be permitted to raise his collateral attack on the Probate Court's actions when he failed to appeal from the proceedings in that court and failed to raise his claim in the trial court, and the facts and circumstances of the present case did not constitute the exceptional case in which the lack of jurisdiction was so manifest as to warrant review.

2. The plaintiff could not prevail on his claim that the trial court improperly concluded that he lacked standing, as all of the claims he alleged in his complaint belonged to the bankruptcy estate; the plaintiff lacked standing to pursue his claims in those counts of his complaint that he asserted arose after the resolution of the bankruptcy proceedings and pertained to the October, 2017 quitclaim deed, as all of the alleged conduct purportedly occurred in September, 2017, when R's voluntary conservatorship terminated and the unit was transferred to A Co., and, thus, the only basis for the plaintiff to have standing to raise those claims was his interest in the unit that originated in 2009, which undisputedly belonged to the bankruptcy estate.

Argued February 19—officially released September 29, 2020

Action to quiet title to a certain campground unit, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Hon. Emmet L. Cosgrove*, judge trial referee, granted the motions to dismiss filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Matthew S. Carlone*, for the appellant (plaintiff).

*Charles D. Houlihan, Jr.*, for the appellees (named defendant et al.).

*Kerry R. Callahan*, with whom was *Jeffrey E. Renaud*, for the appellee (defendant Franklin G. Pilicy).

*Franklin G. Pilicy*, for the appellee (defendant Lake Williams Campground Association, Inc.).

*Opinion*

DiPENTIMA, C. J. This appeal stems from a family dispute among a father and his two sons. In an effort to revive his claims to ownership of a campground parcel, the plaintiff, Patrick Rider, has created an appellate argument reminiscent of Frankenstein's monster,[1] as he has stitched together aspects of four separate matters: a probate proceeding, a bankruptcy action, a separate 2017 civil action (2017 action) and the underlying action in an effort to reverse the judgment of the trial court. The plaintiff appeals from the judgment of the trial court granting the motions to dismiss filed by the defendants, Brian Rider, individually and in his capacities as the executor and conservator of the estate of Leigh H. Rider, Jr. (Leigh Rider), Lake Williams Campground, Inc., Lake Williams Campground Association, Inc. (Association), Charles D. Houlihan, Jr., and Franklin G. Pilicy. The plaintiff and Brian Rider are the sons of Leigh Rider. On appeal, the plaintiff presents, for the first time, a collateral challenge to the appointment by the Probate Court of North Central Connecticut (Probate Court) of Brian Rider as conservator for Leigh Rider and the subsequent conveyance of a campground property from the conserved Leigh Rider to the Association. The plaintiff further contends that the trial court improperly dismissed his complaint on the ground that he lacked standing. We affirm the judgment of the trial court.

As we recently have stated, "[w]hen a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *State Marshal Assn. of Connecticut, Inc.* v. *Johnson*, 198 Conn. App. 392, 394,     A.3d     (2020).

The plaintiff commenced the underlying action on April 17, 2018, by service of an eight count complaint. The plaintiff brought this action against Brian Rider individually and in his capacity as the executor of the estate of Leigh Rider, who died on December 2, 2017. He also sued Brian Rider in his capacity as the conservator of Leigh Rider, a position that Brian Rider held from July 27 to September 28, 2017. Additionally, the plaintiff named the Lake Williams Campground, Inc., and the Association as defendants. The plaintiff described the Lake Williams Campground, Inc., as a "Connecticut common interest cooperative community consisting of subdivided parcels of real property created pursuant to the [d]eclaration of Lake Williams Campground," and

these parcels, as subdivided, are known as "Units." The declaration created the Association. Finally, the plaintiff named in his complaint two attorneys, Houlihan and Pilicy, who represented certain defendants at relevant times in these proceedings.

The plaintiff alleged that, in 2009, Leigh Rider and his wife, Sandra Rider,[2] owned a parcel of property known as "Unit #1." At that time, Leigh Rider and Sandra Rider wanted the plaintiff to join the Association's board of directors and take over control of its financial affairs. As a prerequisite, the plaintiff needed to become an owner of a Unit in the campground. Thus, "Leigh and Sandra Rider represented to the plaintiff that they would transfer title to Unit #1 to the plaintiff in exchange for the plaintiff agreeing to become a member of the board of directors for at least two (2) years." The plaintiff agreed to this plan, and Leigh Rider represented that title to Unit #1 had been conveyed to the plaintiff, who accepted a position on the board of directors. The plaintiff subsequently learned that the quitclaim deed that was to transfer ownership of Unit #1 to him had not been recorded, and that the Association and Lake Williams Campground, Inc., had potential ownership claims to that parcel. The plaintiff alleged a cause of action to quiet title to Unit #1, pursuant to General Statutes § 47-31, in count one of his complaint. In the second count of his complaint, the plaintiff alleged that he previously had commenced the 2017 action,[3] seeking, inter alia, to quiet title and, or, to obtain an equitable lien on Unit #1.

Counts three and four set forth claims of fraud against Brian Rider, as conservator for Leigh Rider, and Houlihan, who was counsel for Brian Rider as conservator, while counts five and six alleged that Pilicy and the Association were "accessories" to fraud. Regarding these counts, the plaintiff alleged that as part of the 2017 action, he had recorded a lis pendens in the Lebanon land records. Approximately four months later, Leigh Rider filed a petition in the Probate Court voluntarily seeking the appointment of a conservator.[4] The Probate Court granted his petition and appointed Brian Rider as conservator. Leigh Rider subsequently filed a request for release from the voluntary conservatorship, but before that request could be acted on, Brian Rider, as conservator, entered into a contract to sell certain properties owned by Leigh Rider to the Association; Unit #1 was not part of this transaction. One day before the termination of the voluntary conservatorship, the Probate Court approved the sale of Leigh Rider's properties. Later that day, Brian Rider, as conservator, executed a deed conveying Unit #1 from Leigh Rider to the Association. The deed was recorded on the land records the next day. According to the plaintiff's complaint, Houlihan and Pilicy witnessed the deed and were aware of the 2017 action and the lis pendens encumbering Unit #1.

On October 14, 2017, the plaintiff and Leigh Rider reached a settlement whereby Leigh Rider agreed to transfer title of Unit #1 to the plaintiff in exchange for the withdrawal of the 2017 action. Approximately six weeks later, the plaintiff received a letter from the Association stating that it owned Unit #1. In response, the plaintiff notified the relevant parties that Unit #1 should not have been included in the sale of Leigh Rider's properties and that they should take all necessary steps to remedy the situation.

Count seven of the plaintiff's complaint incorporated most of the plaintiff's prior allegations as stated in counts one through six and set forth a claim of breach of fiduciary duty as to Brian Rider, as conservator. Finally, in count eight of the complaint, the plaintiff sought a declaratory judgment that the deed transferring Unit #1 to the Association in the absence of approval from the Probate Court was void. In his prayer for relief, the plaintiff requested an order establishing his ownership of Unit #1, an equitable lien as to Unit #1, a declaratory judgment declaring that the transfer of Unit #1 to the Association was void, money damages, attorney's fees and costs.

On June 6, 2018, Brian Rider, individually and in his capacities as executor and conservator, and Lake Williams Campground, Inc., filed a motion to dismiss the plaintiff's complaint. Specifically, these defendants argued, inter alia, that the plaintiff had filed a voluntary bankruptcy petition in August, 2014,[5] and, as a result, his interest in Unit #1 became the property of the bankruptcy estate. These defendants, therefore, claimed that the plaintiff lacked standing. Houlihan filed a similar motion on the same day. One week later, Pilicy raised the same standing argument in his motion to dismiss. On July 25, 2018, the plaintiff acknowledged that the three motions to dismiss were "substantively identical" and filed a single objection in response. The court heard argument from the parties on August 6, 2018.[6]

On October 12, 2018, the court, *Hon. Emmet L. Cosgrove*, judge trial referee, issued a memorandum of decision granting the motions to dismiss filed by the defendants.[7] At the outset of its analysis, the court stated: "The defendants' main argument is that the court lacks subject matter jurisdiction because the plaintiff lacks standing because he failed to disclose his interest in Unit #1 when he voluntarily declared bankruptcy in 2014. Accordingly, his interest in Unit #1 remains with his bankruptcy trustee, who possess[es] the sole right to exercise that interest but is not a party to this action." The court concluded that the plaintiff had been aware of his potential interest in Unit #1 in 2009, prior to his filing of the bankruptcy petition, but had failed to include it in either the initial 2014 bankruptcy petition or in any subsequent amendments.[8] As a result of this failure, his claims relating to Unit #1 belonged solely

to the bankruptcy trustee.[9]

On November 30, 2018, the plaintiff moved for reargument and reconsideration of the decision to dismiss his complaint for lack of subject matter jurisdiction. He argued, inter alia, that counts three through eight of the complaint did not pertain to his 2009 agreement with Leigh Rider; those counts, he claimed, arose from the October 14, 2017 quitclaim deed transferring Unit #1 to him, which was part of the agreement to withdraw the 2017 action. On January 4, 2019, the court denied the plaintiff's motion, concluding that the plaintiff failed to plead facts that would establish his standing to assert the claims in his complaint. The plaintiff then filed a second motion for reargument and reconsideration, which the court denied on January 28, 2019. This appeal followed. Additional facts will be set forth as necessary.

Before addressing the specific appellate claims raised by the petitioner, we set forth the relevant legal principles. "The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because a challenge to the jurisdiction of the court presents a question of law, our review of the court's legal conclusion is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Romeo* v. *Bazow*, 195 Conn. App. 378, 385–86, 225 A.3d 710 (2020).

Questions of standing implicate the court's subject matter jurisdiction. *Jenzack Partners, LLC* v. *Stoneridge Associates, LLC*, 334 Conn. 374, 382, 222 A.3d 950 (2020). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *Starboard Resources, Inc.* v. *Henry*, 196 Conn. App. 80, 88, 228 A.3d 1042, cert. denied, 335 Conn. 919, 231 A.3d 1170 (2020). If a party lacks standing, then the court is without subject matter jurisdiction. *Saunders* v. *Briner*, 334 Conn. 135, 156, 221 A.3d 1 (2019). Guided by these principles, we now turn to the specific claims raised

by the plaintiff in this appeal.

## I

The plaintiff first claims that the 2017 conveyance of Unit #1 to the Association, which occurred through Brian Rider's actions as conservator, was invalid because the conservatorship was void ab initio. The plaintiff contends, therefore, that Brian Rider lacked the legal authority to transfer, sell or convey any of the property owned by Leigh Rider, including Unit #1. Essentially, the plaintiff seeks, for the first time, to collaterally challenge the Probate Court proceedings in this appeal. We decline to consider this collateral attack on the actions of the Probate Court.

The following additional facts from the Probate Court proceedings are necessary for our discussion. On June 28, 2017, Leigh Rider petitioned the Probate Court to appoint a voluntary conservator of both his estate and his person pursuant to General Statutes § 45a-646.[10] See footnote 4 of this opinion. The Probate Court scheduled a hearing on the petition on July 27, 2017. Following that hearing, the Probate Court issued a decree appointing Brian Rider as conservator of the person and the estate of Leigh Rider. On August 29, 2017, Thomas Becker, the attorney for Leigh Rider, notified the Probate Court in writing of Leigh Rider's request to revoke the voluntary conservatorship.[11] On August 31, 2017, the Probate Court sent notice of Leigh Rider's request to be released from the voluntary conservatorship and that pursuant to General Statutes § 45a-647,[12] such release would occur on September 28, 2017.

On September 11, 2017, Houlihan, as attorney for Brian Rider as conservator, filed a motion with the Probate Court to approve the sale of property owned by Leigh Rider to the Association. Attached to that motion was the real estate contract identifying Leigh Rider as the seller and the Association as the buyer. That contract contained the following clause with respect to Unit #1: "Unit [#1] . . . is subject to pending litigation between Patrick Rider and Leigh Rider. If the litigation is resolved in favor of Leigh Rider, Leigh Rider shall convey Unit [#1] to the Association." After a September 27, 2017 hearing, the Probate Court issued a decree, approving the sale pursuant to the terms of the contract. Finally, the Probate Court ended the voluntary conservatorship effective September 28, 2017. The plaintiff did not file an appeal to challenge any of the actions of the Probate Court. See, e.g., General Statutes § 45a-186; cf. *In re Probate Appeal of Buckingham*, 197 Conn. App. 373, 376, 231 A.3d 1261 (2020); *In re Probate Appeal of Knott*, 190 Conn. App. 56, 61–62, 209 A.3d 690 (2019).

For the first time, on appeal, the plaintiff argues that the Probate Court lacked statutory authority to appoint Brian Rider as conservator, and therefore all the subse-

quent proceedings in that court were void ab initio. Underlying this claim are two letters relating to the appointment of Brian Rider as conservator for Leigh Rider. The first letter, dated July 22, 2017, and addressed to the "Enfield Court of Probate," purported to be a letter from Leigh Rider revoking his application for a voluntary conservatorship and requesting the cancellation of the July 27, 2017 hearing regarding the appointment of a voluntary conservator. That letter bears a stamp indicating only that it had been "received" on July 26, 2017.

The second letter, undated, appears to have been sent via telefax, and was addressed to the "North Central Connecticut Probate Court" from Brian Rider. It was stamped as "received" on July 24, 2017. This document alleged that Leigh Rider's cancellation letter resulted from misinformation and manipulations by the plaintiff. The second letter requested that the Probate Court proceed with the hearing to determine Leigh Rider's true intent regarding the appointment of a voluntary conservatorship. It bears emphasizing that the Probate Court did not address either of these letters in its decrees, and there is no evidence in the record before this court that either letter had been received by the Probate Court.

Despite this evidentiary lacuna, the plaintiff claims nonetheless that this court should rely on the contents of the first letter and conclude that the Probate Court lacked subject matter jurisdiction so that the appointment of Brian Rider as the conservator for Leigh Rider, and all the proceedings that followed in the Probate Court, must be determined to be void. We are not persuaded.

As a court of limited jurisdiction, the Probate Court "is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Geremia* v. *Geremia*, 159 Conn. App. 751, 766–67, 125 A.3d 549 (2015); see also *Heussner* v. *Hayes*, 289 Conn. 795, 802–803, 961 A.2d 365 (2008). The plaintiff contends that the first letter, purportedly from Leigh Rider, withdrew the petition for a voluntary conservatorship, and therefore the Probate Court lacked the statutory authority to appoint Brian Rider as conservator for Leigh Rider pursuant to § 45a-646. Alternatively, the plaintiff claims that the first letter operated as notice pursuant to § 45a-647 and commenced the thirty day time period to end the voluntary conservatorship, resulting in the end of the conservatorship before the Probate Court's approval of the sale of Leigh Rider's real estate.

The plaintiff relies on his claim that the Probate Court lacked subject matter jurisdiction to overcome the myriad roadblocks to appellate review, including his failure to appeal directly from the Probate Court proceedings,

his failure to raise this claim in the trial court and his reliance on documents not presented to the trial court. To be sure, it is often stated that "[a] claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings . . . including on appeal . . . ." (Internal quotation marks omitted.) *Starboard Resources, Inc.* v. *Henry*, supra, 196 Conn. App. 88; *Kelly* v. *Kurtz*, 193 Conn. App. 507, 539, 219 A.3d 948 (2019); see also *Taylor* v. *Wallace*, 184 Conn. App. 43, 48, 194 A.3d 343 (2018) (issue of subject matter jurisdiction may be raised at any time, even at appellate level); *Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 500 n.10, 167 A.3d 1112 (claim that implicates court's subject matter jurisdiction may be raised at any time, including for first time on appeal), cert. denied, 327 Conn. 973, 174 A.3d 192 (2017).

Our jurisprudence, however, has recognized limits to raising a collateral attack setting forth a claim of lack of subject matter jurisdiction. See, e.g., *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 103–104, 616 A.2d 793 (1992). "Although challenges to subject matter jurisdiction may be raised at any time, it is well settled that [f]inal judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . . The reason for the rule against collateral attack is well stated in these words: The law aims to invest judicial transactions with the utmost permanency consistent with justice. . . . Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . . [T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings. Unless it is *entirely invalid* and that fact is disclosed by an inspection of the record itself the judgment is invulnerable to indirect assaults upon it. . . .

"[I]t is now well settled that, [u]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Sousa* v. *Sousa*, 322

Conn. 757, 771–72, 143 A.3d 578 (2016); see also *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013) (litigation about subject matter jurisdiction should take into account principle of finality of judgments, particularly when parties had full opportunity originally to contest jurisdiction); *Urban Redevelopment Commission* v. *Katsetos*, 86 Conn. App. 236, 244, 860 A.2d 1233 (2004) (collateral attack on judgment is procedurally impermissible substitute for appeal and litigant generally must resort to direct appeal to correct perceived wrongs), cert. denied, 272 Conn. 919, 866 A.2d 1289 (2005). Our Supreme Court further explained that such a collateral attack is permissible only in rare instances when the lack of jurisdiction is entirely obvious so as to "amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority . . . [or] the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." (Citations omitted; internal quotation marks omitted.) *Sousa* v. *Sousa*, supra, 773.

In the present case, the Probate Court's purported lack of subject matter jurisdiction resulting from the lack of statutory authority is not entirely obvious. Indeed, the plaintiff acknowledges in his appellate brief that the legal effect of the purported revocation letter "appears to be a novel issue as undersigned counsel was unable to find any case law, or other authority, that might provide guidance." Additionally, assuming that the Probate Court received the two letters from Leigh Rider and Brian Rider, it never addressed or discussed those documents in a decree or indicated whether it found them to be authentic or credible. Further, the plaintiff has not set forth any reason why he should be permitted to raise his collateral attack when he failed to appeal directly from the proceedings in the Probate Court. Finally, we are not persuaded that these facts and circumstances constitute the exceptional case in which the lack of jurisdiction was so manifest as to warrant review at this point in the proceedings. Accordingly, we decline the plaintiff's invitation to consider his untimely collateral challenge to the subject matter jurisdiction of the Probate Court.

## II

The plaintiff next claims that the trial court improperly concluded that he lacked standing. Specifically, he argues that the court erred by determining that all of the claims alleged in his complaint were the property of his bankruptcy estate, and that, therefore, he lacked standing and the court lacked subject matter jurisdiction. We are not persuaded.

The plaintiff does not challenge the law cited by the trial court regarding the transfer of assets and causes of action relative to a bankruptcy estate. Specifically, the court stated: "Commencement of a bankruptcy pro-

ceeding creates an estate that comprises all legal or equitable interests of the debtor in property as of the commencement of the case. . . . The debtor must file a formal statement with the Bankruptcy Court, including a schedule of his or her assets and liabilities. . . . The assets, which become the property of the bankruptcy estate, include all causes of action belonging to the debtor that accrued prior to the filing of the bankruptcy petition. . . . A cause of action becomes a part of the bankruptcy estate even if the debtor fails to schedule the claim in his petition. . . . [P]roperty that is not formally scheduled is not abandoned and therefore remains part of the estate. . . . Courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed. . . . *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 164–65, 2 A.3d 873 (2010).

"[*I*]*t is a basic tenet of bankruptcy law . . . that all assets of the debtor, including all* [*prepetition*] *causes of action belonging to the debtor, are assets of the bankruptcy estate* that must be scheduled for the benefit of the creditors . . . . *Beck & Beck, LLC* v. *Costello*, 178 Conn. App. 112, 117, 174 A.3d 227 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 555 (2018). [W]here a debtor fails to list a claim as an asset on a bankruptcy petition, the debtor is without legal capacity to pursue the claim on his or her own behalf [postdischarge]. . . . This is so regardless of whether the failure to schedule causes of action is innocent. . . . Id., 118." (Emphasis added; internal quotation marks omitted.)

The plaintiff does not contest the dismissal of counts one and two of his complaint due to the lack of standing. Instead, he argues that counts three through eight of this operative complaint do not arise from a prebankruptcy cause of action related to Unit #1.[13] He maintains that the causes of action alleged in counts three through eight arose when Leigh Rider executed the quitclaim deed in favor of the plaintiff on October 14, 2017, three years after the resolution of his bankruptcy proceedings; see footnote 9 of this opinion; and, therefore, the court improperly dismissed these counts. The court concluded that the plaintiff had failed to allege facts setting forth his standing to assert the causes of action pleaded in counts three through eight. We agree with the court.

A close examination of the relevant counts of the complaint is necessary for the resolution of this claim. Count one of the plaintiff's complaint contained twenty-one paragraphs. Count three, directed against Brian Rider, as conservator, incorporated the first seventeen paragraphs. The remaining paragraphs of count three alleged, inter alia, that Brian Rider, as conservator, had perpetrated a fraud by conveying Unit #1 to the associa-

tion and that he had failed to take steps to reflect that the plaintiff, in fact, owned Unit #1. Counts four, five and six incorporated all but one paragraph of count three, and added allegations of liability against Houlihan, Pilicy and the Association for their actions related to the transfer of Unit #1 to the Association. Count seven also incorporated all but one paragraph from count three and added allegations that Brian Rider's conduct constituted a breach of fiduciary duty as conservator. Count eight, after incorporating all but one paragraph from count three, contained allegations that Brian Rider, as conservator, had lacked authorization from the Probate Court to transfer Unit #1 and sought a declaratory judgment that the deed transferring ownership from Leigh Rider to the Association was void.

In its memorandum of decision granting the motions to dismiss, the court concluded that the plaintiff lacked standing because he had failed to disclose his actual or potential interest in Unit #1 in his 2014 bankruptcy petition. The court also noted that "[t]he plaintiff did not list any properties that he owned or had any interest in [in his bankruptcy petition]. . . . According to his own complaint, the plaintiff was aware of his potential interest in Unit #1 in 2009, and exercised ownership of the unit, five years before the filing of his bankruptcy petition. . . . Accordingly, the plaintiff had a duty to disclose his interest in Unit #1. His failure to do so means his trustee possesses the claim, not him. Further, the plaintiff has not presented any order from the Bankruptcy Court allowing him to pursue his claim independently." (Citation omitted.)

On November 30, 2018, the plaintiff filed a motion to reargue and for reconsideration. Therein, he contended that the 2009 oral promise from Leigh Rider to transfer Unit #1 to the plaintiff pertained only to counts one and two, while the balance of the complaint relied on the quitclaim deed that was part of the agreement to settle the 2017 action. Specifically, the plaintiff asserted: "Since it was not possible to list the claims set forth in count three through eight in the plaintiff's 2014 bankruptcy petition, these claims are not property of the bankruptcy estate. Therefore, the plaintiff has standing to assert the claims pertaining to the 2017 quitclaim deed set forth in counts three through eight." The court denied the motion for reargument and reconsideration on January 4, 2019. The plaintiff then filed a second motion for reargument and reconsideration, which the court denied without further comment.

Resolution of this claim requires us to interpret the pleadings, namely, the plaintiff's complaint. "[T]he interpretation of pleadings is always a question [of law] for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied

by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Construction of pleadings is a question of law. Our review of a trial court's interpretation of the pleadings therefore is plenary." (Citation omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Scroggin*, 178 Conn. App. 727, 743, 176 A.3d 1210 (2017); see also *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 419, 219 A.3d 801 (2019) (interpretation of pleadings presents question of law subject to plenary review), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020); *Wiele* v. *Board of Assessment Appeals*, 119 Conn. App. 544, 555, 988 A.2d 889 (2010) (pleadings are to be interpreted broadly, but also must be construed reasonably and not in such way so as to strain bounds of rational comprehension).

A careful review of the plaintiff's complaint reveals that the fraudulent conduct alleged in counts three through six against Brian Rider as conservator, Houlihan, Pilicy and the Association, purportedly occurred in September, 2017, when the transaction involving the sale and transfer of Unit #1 to the Association took place. Those events occurred *prior* to the October 14, 2017 quitclaim deed executed as part of the settlement of the 2017 action. Accordingly, the only basis for the plaintiff to have standing to raise these claims was his interest in Unit #1 that originated in 2009, prior to the bankruptcy proceedings. As we have noted, that interest undisputedly belonged to the bankruptcy estate and not the plaintiff. We agree, therefore, with the court that the plaintiff failed to set forth allegations in counts three through six that establish his standing to pursue such claims.

This analysis and reasoning similarly applies to count seven of the complaint, which alleged breach of fiduciary duty against Brian Rider, as conservator. As alleged in the complaint, the conservatorship terminated on September 28, 2017. That termination preceded the execution of the October 14, 2017 quitclaim deed on which the plaintiff relies in his appellate argument. Thus, the only basis for the plaintiff's standing as to count seven is that from 2009, which, as we repeatedly have noted, belonged to the bankruptcy estate and not the plaintiff. Accordingly, we conclude that the court properly determined that the plaintiff lacked standing as to count seven of his complaint.

Count eight of the plaintiff's complaint sought a declaratory judgment that the transfer of Unit #1 to the Association was void due to the lack of authorization by the Probate Court. As these events occurred prior to the execution of the October 14, 2017 quitclaim deed, we again conclude that the court properly determined

that the plaintiff lacked standing to pursue this claim. The only interest that the plaintiff could have had in Unit #1 originated in 2009 and therefore belonged exclusively to the bankruptcy estate. The plaintiff's post hoc efforts to reinvent the allegations contained in his complaint are unavailing. We therefore conclude that the trial court properly granted the motions to dismiss due to the plaintiff's lack of standing.[14]

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] See M. Shelley, Frankenstein (1818); see generally *Daniel* v. *Duetch Bank National Trust Co.*, United States District Court, Docket No. 07-cv -01400-MSK-MEH (D. Colo. February 27, 2008) (assertions and language in complaint culled from various form books and pleadings in other cases described as "Frankenstein's Monster"); *BlueStone Natural Resources II, LLC* v. *Randle*, 601 S.W.3d 848, 853 (Tex. App. 2019) (party described contract, "with its parts cobbled together from the parts bin of oil and gas lease provisions" as " 'Frankenstein's Monster' "), review granted, Texas Supreme Court, Docket No. 19-0459 (May 29, 2020); *Hudson* v. *Hapner*, 170 Wn. 2d 22, 36, 239 P.3d 579 (2010) (Sanders, J., dissenting) ("[i]t is difficult to address the majority's reasoning because, much like Frankenstein's monster, the majority opinion is a sewn-together collection of partial arguments, each pilfered from a different cadaver and none lending any real support to its conclusion").

[2] The court noted in its memorandum of decision that Sandra Rider died sometime after 2009 and was never a party to these proceedings.

[3] See *Rider* v. *Rider*, Superior Court, judicial district of New London, Docket No. CV-17-6029789-S (withdrawn by plaintiff on October 23, 2017).

[4] See *In re Leigh H. Rider, Jr.*, Court of Probate, North Central Connecticut (17-0344) (June 28, 2017).

[5] See *In re Rider*, United States Bankruptcy Court, Case No. 14-21583 (D. Conn. August 7, 2014).

[6] This court has not been provided with a transcript of the August 6, 2018 hearing.

[7] It appears that the Association neither filed its own motion to dismiss nor joined any of the three motions to dismiss filed by the other defendants. Nevertheless, the court's conclusion that the plaintiff lacked standing, which implicated subject matter jurisdiction and the subsequent dismissal of the complaint, applies to all the defendants. See, e.g., *In re Michelle G.*, 52 Conn. App. 187, 190, 727 A.2d 226 (1999) (questions of standing and subject matter jurisdiction may be raised at any time during proceedings and by any party or by court sua sponte).

We also note that the court properly concluded that the other arguments raised by the defendants, res judicata and lack of privity to a contract, "are inappropriate in a motion to dismiss . . . [r]ather, those claims are properly raised through a motion for summary judgment." (Citation omitted.)

[8] The court took judicial notice of the plaintiff's bankruptcy petition.

[9] The court also determined that the plaintiff's May 23, 2018 opening of the bankruptcy case did not afford him any relief. Specifically, the court stated: "[O]nce a debtor fails to disclose an asset in his or her bankruptcy petition, the debtor may not claim such asset after discharge of the debt, regardless if the debtor opens the petition. Here, according to the docket report from the Bankruptcy Court, the court issued an order discharging the plaintiff's debt on November 19, 2014, and closed the case on December 10, 2014. Thus, the plaintiff's opening of the case does not change the fact that he lacks standing to pursue his claimed interest in Unit # 1."

[10] General Statutes § 45a-646 provides in relevant part: "Any person may petition the Probate Court . . . for the appointment of a conservator of the person or a conservator of the estate, or both. . . . Upon receipt of the petition, the court shall set a time and place for hearing and shall give such notice as it may direct to the petitioner, the petitioner's spouse, if any . . . and to other interested parties, if any. After seeing the respondent in person and hearing his or her reasons for the petition and after explaining to the respondent that granting the petition will subject the respondent or respondent's property, as the case may be, to the authority of the conserva-

tor, the court may grant voluntary representation and thereupon shall appoint a conservator of the person or estate or both, and shall not make a finding that the petitioner is incapable. The conservator of the person or estate or both, shall have all the powers and duties of a conservator of the person or estate of an incapable person appointed pursuant to section 45a-650. . . .''

See generally *Heinemann* v. *Heinemann*, Superior Court, judicial district of Middlesex, Docket No. CV-16-6015584-S (September 14, 2017).

[11] Specifically, Becker's letter to the Probate Court stated: ''I am the attorney for Leigh Rider in the matter of his voluntary conservatorship. Please let this letter stand as Mr. Leigh Rider's request to revoke his voluntary conservatorship. The matter is currently being set down for a hearing on a real estate contract with the Lake Williams Campground association. There is a second contract on the same piece of property from a corporation owned by Mr. Rider's other son Patrick Rider. Please put all of these matters together in a single hearing if possible. Also I cannot be available for a Monday or a Wednesday. Thank you.''

[12] General Statutes § 45a-647 provides: ''Any person who is under voluntary representation as provided by section 45a-646 shall be released from voluntary representation upon giving thirty days' written notice to the Court of Probate.''

See generally *Day* v. *Seblatnigg*, 186 Conn. App. 482, 505, 199 A.3d 1103 (2018), cert. granted, 331 Conn. 913, 204 A.3d 702 (2019).

[13] The plaintiff also contends that the contract approved by the Probate Court specifically excluded Unit #1. That assertion is incorrect. The contract executed by Brian Rider, as conservator, and the association provided: ''Unit [#1] . . . is subject to pending litigation between Patrick Rider and Leigh Rider. If the litigation is resolved in favor of Leigh Rider, Leigh Rider shall convey Unit [#1] to the Association.'' Furthermore, the plaintiff failed to appeal from the decree of the Probate Court approving the sale of the property owned by Leigh Rider, including Unit #1.

[14] The plaintiff also claims that the court improperly denied his two motions for reargument and reconsideration. We are not persuaded. ''[T]he purpose of reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument.'' (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Mamudi*, 197 Conn. App. 31, 47–48 n.13, 231 A.3d 297, cert. denied, 335 Conn. 921, 231 A.3d 1169 (2020). We review the denial of a motion for reargument under the abuse of discretion standard. *Priore* v. *Haig*, 196 Conn. App. 675, 685, 230 A.3d 714 (2020).

As we have concluded that the court properly granted the motions to dismiss the plaintiff's complaint on the basis of his lack of standing, no further discussion is necessary with respect to his claim regarding the denial of his motions for reargument and reconsideration.