******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SHERI MARZARO *v.* SEBASTIANO G. MARZARO
## (AC 46459)

Elgo, Seeley and DiPentima, Js.

*Syllabus*

The defendant appealed from, inter alia, the judgment of the trial court dissolving his marriage to the plaintiff. The defendant claimed, inter alia, that the court improperly concluded that the marital residence, which was held in a revocable trust, with the parties as cotrustees, was subject to equitable distribution pursuant to statute (§ 46b-81). *Held*:

The trial court did not abuse its discretion in distributing the marital property and assigning the marital debt even though it awarded a larger portion of the marital assets to the plaintiff and the majority of the debt to the defendant, as the court reasonably could have considered the parties' unequal earnings potential and that the majority of the liabilities listed on the defendant's financial affidavit were debts related to his business.

The trial court's distribution of the marital residence as marital property pursuant to § 46b-81 was not improper because the defendant and the plaintiff had a presently existing interest in the marital residence, as they were the lifetime beneficiaries of the trust and had the ability to invade the trust property by revoking the trust, and their children, as remainder beneficiaries, did not have a present interest in the trust and were not necessary and indispensable parties to the action.

The plaintiff, whose motion to cite in the cotrustees of the trust had been granted by the trial court, was not required to plead any additional facts with respect to counts two and three of her amended complaint because she did not raise separate causes of action in those counts or allege any wrongdoing in connection with the trust but, rather, identified the beneficiaries and trustees of the trust and claimed an interest in the marital residence that was held in the trust.

This court declined to review the defendant's claim that the trial court improperly denied his motion for contempt regarding the plaintiff's alleged failure to comply with certain discovery orders because the claim was inadequately briefed and, although the defendant sought an articulation of the factual basis of the trial court's decision to deny the motion, he failed to file a motion for review of the trial court's denial of the motion for articulation pursuant to the rule of practice (§ 66-7).

Argued October 9, 2024—officially released March 4, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *M. Moore, J.*, granted the plaintiff's motion to cite in the cotrustees of the Marzaro Family Trust as a defendant; thereafter, the court, *M. Moore, J.*, rendered judgment dissolving the marriage and granting certain other relief, from which the named defendant appealed to this court. *Affirmed.*

*William W. Taylor*, for the appellant (named defendant).

*Richard W. Callahan*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendant Sebastiano G. Marzaro appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Sheri Marzaro.[1] On appeal, the defendant claims that (1) the court abused its discretion in fashioning its financial orders by making a grossly disproportionate property distribution in the plaintiff's favor and by assigning all of the marital debt to him, (2) the court improperly concluded that the parties' marital residence, which was held in the Marzaro Family Trust (trust), was subject to equitable distribution, (3) the plaintiff failed to plead sufficient facts to support a cause of action in counts two and three of her revised complaint and (4) the court improperly denied his motion for contempt and failed to order the

---

[1] In her original complaint, the plaintiff named only Sebastiano G. Marzaro as the defendant. Subsequently, the court granted the plaintiff's motion to cite in the cotrustees of the Marzaro Family Trust as an additional defendant and to amend the complaint to state facts showing the interest of the Marzaro Family Trust in this action. We note that, on his appeal form, Sebastiano G. Marzaro also listed the Marzaro Family Trust and Sebastiano G. Marzaro, cotrustee of the Marzaro Family Trust, as additional parties initiating the appeal. In this opinion, we refer to Sebastiano G. Marzaro as the defendant and to the plaintiff and the defendant, collectively, as the parties.

plaintiff to disclose certain financial documents. We affirm the judgment of the trial court.

The following facts, which were either found by the court or otherwise are undisputed, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant were married on September 1, 1975, in Bel Air, California. Two children were born of the marriage, both of whom reached the age of majority before the dissolution judgment was rendered.

In 1999 or 2000, the parties moved to a house in Easton, Connecticut (marital residence), where the defendant continues to reside. The defendant's primary occupation during the marriage was selling shoes and leather goods imported from Italy. His income varied significantly, as he earned $500,000 in some years and $0 in others. In 2017, the defendant opened a restaurant, called Bigoi Venezia, in New York City. The restaurant is owned by Italmood, Inc., a company created by the defendant approximately twenty years ago. The plaintiff has not been employed full-time for decades. During the marriage, she served as the primary caregiver to the parties' children, and, in the past, she worked as a translator.

During the course of the marriage, the parties acquired several properties in addition to the marital residence—pistachio farmland in California, a home in Greece, and land in Italy. The parties sold the home in Greece around 2019 for approximately 240,000 euros and, with the defendant's knowledge, the plaintiff invested the proceeds with a property developer in Greece. The defendant sold a portion of the pistachio farmland in 2022 and split the proceeds with a friend, with whom he claimed he had an informal partnership. The defendant received approximately $247,000 from that sale and deposited it into his Italmood, Inc., bank account.

The plaintiff left the marital residence around 2014 and did not return. She moved to Europe, first living in Greece, then Italy, and finally France. The plaintiff did not tell the defendant that she was not returning and, despite the passage of several years, the defendant was not aware that the plaintiff had left him. At the time of the dissolution judgment, the plaintiff lived in a small apartment in Paris and was financially supported by her father.

On November 19, 2019, the plaintiff commenced the present dissolution action against the defendant on the ground that the parties' marriage had broken down irretrievably. Following a trial, on March 13, 2023, the court, *M. Moore, J.*, issued a memorandum of decision dissolving the parties' marriage. The court found that the breakdown of the marriage was attributable to both parties.[2] In its financial orders, the court ordered the defendant to pay alimony to the plaintiff in the amount of $1 per week "until the first to occur of the following events: the death of either party or the plaintiff's remarriage or cohabitation pursuant to statute and case law." In its property distribution, the court distributed the marital assets and debts as follows. The court ordered the parties to sell the marital residence and to divide the net proceeds of the sale 60 percent to the plaintiff and 40 percent to the defendant. The court ordered the defendant to transfer to the plaintiff $75,000 from a Chase bank account, which represented approximately 60 percent of the balance of that account. The court further ordered that the plaintiff retain the proceeds from the sale of the home in Greece; the land in Italy

---

[2] The court, pointing to the plaintiff's move to Europe and the defendant's failure to notice that the plaintiff no longer was living with him, found that "[t]he parties appeared severely disconnected in this long-term marriage." The court also recounted the plaintiff's testimony that the defendant was very controlling and that "[the plaintiff] believed the defendant had extramarital affairs and she admitted to falling in love with someone in Greece, but the relationship never materialized."

remains in both parties' names and, in the event that the parties sell it, each party would receive 50 percent of the equity; and the land in California is to be sold, with the parties to split the proceeds equally. The court awarded the defendant sole interest in the restaurant Bigoi Venezia as well as the company Italmood, Inc., which owns Bigoi Venezia. The court ordered each party to be responsible for the debts and liabilities listed on their respective financial affidavits, with the exception of all tax liabilities and the balance on a Nordstrom credit card, for which the defendant was solely responsible. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in issuing its financial orders by making a grossly disproportionate property distribution in the plaintiff's favor and assigning all of the marital debt to the defendant.

Before turning to the defendant's specific challenges to the property distribution, we observe that the "standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation

marks omitted.) *Tilsen* v. *Benson*, 347 Conn. 758, 796, 299 A.3d 1096 (2023).

"[General Statutes §] 46b-81 governs the distribution of the assets in a dissolution case. . . . That statute authorizes the court to assign to either spouse all, or any part of, the estate of the other spouse. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . . Moreover, [w]e have iterated that there is no set formula the court is obligated to apply when dividing the parties' assets and . . . the court is vested with broad discretion in fashioning financial orders. . . . As a panel of this court once expressed, the court has vast discretion in fashioning its orders." (Internal quotation marks omitted.) *Wethington* v. *Wethington*, 223 Conn. App. 715, 734–35, 309 A.3d 356 (2024).

"Generally, we will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Fronsaglia* v. *Fronsaglia*, 202 Conn. App. 769, 776, 246 A.3d 1083 (2021). Nevertheless, "[t]he purpose of dividing marital property is to preserve, as much as possible, the parties' existing standard of living, not to award property to one spouse to the complete exclusion of the other." *Greco* v. *Greco*, 275 Conn. 348, 356, 880 A.2d 872 (2005). An award may

be improper if it imposes a financial obligation on a party that he cannot possibly meet or that renders him destitute. See id., 349–50, 356–57 (concluding that trial court abused its discretion in awarding plaintiff more than 98 percent of marital property, alimony and attorney's fees because financial award far exceeded defendant's income, left defendant destitute, and rendered distribution impracticable); see also *Valentine* v. *Valentine*, 164 Conn. App. 354, 367, 141 A.3d 884, cert. denied, 321 Conn. 917, 136 A.3d 1275 (2016).

On appeal, the defendant contends that the court awarded him only 27 percent of the marital assets or $230,000,[3] while the plaintiff received 73 percent of the marital assets or $636,500. The defendant further contends that the court assigned him more than $1 million of debt, which encompassed all of the debt reflected on his financial affidavit in addition to the Nordstrom debt that was listed on the plaintiff's financial affidavit, while the plaintiff was assigned only her attorney's fees. The defendant claims that the court's financial orders are impossible for him to carry out and "disproportionately favor the plaintiff while simultaneously forcing [him] into financial poverty."

At the outset, we reject the factual premise of the defendant's argument. With respect to his assets and his ability to pay his debts, the defendant does not account for the value of his restaurant, of which he was awarded 100 percent, or any income derived therefrom. He also does not consider his share of the values of the properties in Italy and California.

At trial, the defendant testified that both properties had a total value of only $10,000, as the land in Italy was undeveloped agricultural property "where nothing

---

[3] To arrive at $230,000, the defendant valued his share of the equity in the marital residence at $180,000 and added the $50,000 that he would retain from the Chase bank account.

can be built" and the pistachio farm in California had minimal value because pistachios had not been harvested in three years. As to his restaurant, he asserts that, "at the time of trial, [his] business had no value, and in actuality [had] a negative value due to the past rent due," and that his sole source of income was Social Security. The court, however, rejected these contentions. Although the court did not assign specific values to the defendant's assets or make a specific finding as to his income,[4] it found that, "[a]ccording to [the defendant's] testimony, the assets in his name have no value and his business makes no income for him. *The court does not find the defendant's testimony credible.*"[5] (Emphasis added.) We will not disturb this credibility determination made by the court. See *Fronsaglia* v. *Fronsaglia*, supra, 202 Conn. App. 779; see also *Greco* v. *Greco*, supra, 275 Conn. 359 (on appeal, "[w]e cannot retry the facts or pass on the credibility of the witnesses" (internal quotation marks omitted)).

The defendant's argument with respect to the amount of debt assigned to him similarly rests on a faulty premise. The defendant states that the court assigned him more than $1 million of debt, which encompassed all of the liabilities reflected on his financial affidavit. The court, however, provided that, from the sale of the marital residence, "the current mortgage and equity line on

[4] "Our Supreme Court . . . has recognized that [t]he court need not . . . assign specific values to the parties' assets." (Internal quotation marks omitted.) *Walton* v. *Walton*, 227 Conn. App. 251, 266, 321 A.3d 1180 (2024). Here, the defendant cannot assert that the court improperly failed to assign a specific value to his assets given the scant evidence of valuation presented by the parties. See id., 267.

[5] The court explained that "[t]he defendant failed to list accounts, assets, and partnership interests on his financial affidavit. He failed to produce important discovery to the plaintiff until shortly before trial." For instance, the court noted that, even though the defendant characterized the land in California as worthless, he had sold a portion of land near the pistachio farmland in January, 2022, from which he testified to receiving approximately $247,000 and depositing it into a bank account.

the property shall be paid from the gross proceeds." The mortgage and home equity line of credit make up $441,630 of the debt listed on the defendant's financial affidavit. Thus, the amount of debt assigned to the defendant is significantly less than what he posits on appeal.

Considering the evidence in the record and the facts found by the trial court, we cannot conclude that the court abused its discretion in issuing its financial orders. Although the court awarded a larger portion of the marital assets to the plaintiff, "[t]here is no set formula the court is obligated to apply when dividing the parties' assets and . . . the court is vested with broad discretion in fashioning financial orders." (Internal quotation marks omitted.) *Pencheva-Hasse* v. *Hasse*, 221 Conn. App. 113, 132, 300 A.3d 1175 (2023). Section 46b-81 "authorizes the court to assign to either spouse all, or any part of, the estate of the other spouse." (Internal quotation marks omitted.) *Wethington* v. *Wethington*, supra, 223 Conn. App. 734–35. Thus, even if the court distributed the parties' property in the manner described by the defendant, such that the plaintiff received approximately 70 percent of the assets and the defendant received approximately 30 percent, that does not, by itself, render the court's award inequitable. See *O'Brien* v. *O'Brien*, 326 Conn. 81, 122, 161 A.3d 1236 (2017) (concluding that "a distribution ratio of 78 percent to 22 percent is not, on its face, excessive," and observing that "we have upheld distributions awarding as much as 90 percent of the marital estate to one party").

Furthermore, the court's distribution reasonably could have reflected the unequal earnings potential of the parties.[6] See id.; see also *Wethington* v. *Wethington*,

---

[6] In its decision, the court did not explicitly discuss the factors set forth in § 46b-81 (c). Nevertheless, we may examine what the court reasonably could have considered, on the basis of the facts it found, in support of its conclusion. See *K. S.* v. *R. S.*, 350 Conn. 692, 730–31, 326 A.3d 187 (2024).

supra, 223 Conn. App. 734–35 (in determining assignment of marital property under § 46b-81, court shall consider, among other things, amount and sources of income, earning capacity, employability, and opportunity of each party for future acquisition of capital assets and income). As explained previously, the court did not credit the defendant's testimony that he earned no income from his business. The defendant himself testified that the restaurant would earn him income in the future, and the court acknowledged that testimony in its decision. The court found that, throughout the parties' marriage, the defendant had been involved in various business ventures with fluctuating income, making up to $500,000 in some years, whereas the plaintiff was the primary caregiver for the parties' children and had not been employed full-time for decades, and she was currently supported financially by her father.[7]

The court also reasonably could have considered that, apart from the mortgage and home equity debt already discussed, the remaining liabilities listed on the defendant's financial affidavit—including $21,878 in sales tax debt, $40,000 in income tax debt,[8] $220,000 owed in back rent, $92,996 owed on an Italmood, Inc., credit line, and more than $120,000 in credit card debt[9]—were debts related to the defendant's business.

---

[7] The plaintiff's financial affidavit reflected that she received $233 per week from Social Security and $115.38 per week in interest from the investment of proceeds from the sale of the property in Greece, although the plaintiff testified that she had not collected the interest in two years.

[8] Although the defendant characterized the income tax debt as the personal debt of both parties, he explained that the debt was incurred because he withdrew money from a defined benefit pension plan to open his restaurant, and he deferred the payment of taxes at that time.

[9] The defendant testified that the only credit card that was not used for his business was the Nordstrom credit card, which the plaintiff also listed on her financial affidavit. With respect to the Nordstrom credit card debt, the plaintiff testified that the defendant had cut off her access to the credit card when she told him she wanted a divorce, and, at that time, there was no balance due.

Thus, it was not inequitable for the court to assign the responsibility of those debts to the defendant. See *Fronsaglia* v. *Fronsaglia*, supra, 202 Conn. App. 780 (rejecting claim that property distribution was grossly disproportionate because defendant, inter alia, failed to account for fact that "the debts apportioned to him included business obligations that he solely and unilaterally accumulated throughout the marriage, largely without the plaintiff's knowledge and over which the plaintiff had no control"); see also *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 13, 977 A.2d 722 (2009) (plaintiff's claim that court improperly ordered him to pay all of marital debt was unavailing where record revealed that "the majority of the liabilities that were assigned to him stemmed from his business dealings").

We therefore conclude that the court's order was fair and equitable. In light of the assets awarded to the defendant and his ability to earn income, the order did not constitute the imposition of a financial obligation on the defendant that he cannot possibly meet or that rendered him destitute. See *Valentine* v. *Valentine*, supra, 164 Conn. App. 367. Accordingly, we conclude that the court did not abuse its discretion in distributing the marital property and assigning the marital debt.

II

The defendant next claims that the court improperly distributed the marital residence. Specifically, he argues that the court improperly concluded that (1) the trust holding title to the marital residence was revocable and, therefore, that the property was part of the marital estate and subject to equitable distribution pursuant to § 46b-81, and (2) the parties' children were not necessary parties to the action. We are not persuaded.

The following additional facts and procedural history are relevant to the resolution of this claim. The parties had the marital residence built in Easton and moved

in when construction was completed in 1999 or 2000. The plaintiff described the home as being very large, approximately 3900 square feet, with four bedrooms, four and one-half bathrooms, and many custom features. At the urging of the plaintiff's father, the parties put the marital residence into the trust.

Throughout the dissolution proceedings, the defendant listed the marital residence as the parties' joint asset on his financial affidavits, but, when trial was scheduled to begin, he removed the property from his financial affidavit and claimed that it belonged to the trust. During trial, the trust declaration was admitted into evidence. Both parties acknowledged that they signed title to the property as trustees back to themselves jointly several times over the years to refinance and to obtain a second mortgage on the marital residence. Nevertheless, the defendant testified that the trust was irrevocable and that the parties' children were the beneficiaries of the trust; the plaintiff, on the other hand, testified that the trust was revocable and that she and the defendant were the beneficiaries during their lifetimes.

In its memorandum of decision, the court recognized that "[a] major issue of contention between the parties was . . . whether this court can order the sale of the marital property" given that title to the property was in the name of the trust. The court determined that, pursuant to the trust declaration, the parties are the trustees of the trust, settlors of the trust and the lifetime beneficiaries of the trust. The court recognized that the trust declaration includes provisions that benefit the parties' children, but only following the death of both parties. The court additionally noted that the trust declaration provides that the parties, as the settlors, may revoke the trust during their lifetimes.

The court also determined as a threshold matter that California law governed the construction of the trust

pursuant to a choice of law provision contained in the trust declaration,[10] but that the ultimate issue of whether the court could distribute the marital residence was governed by Connecticut law.[11] The court explained that, pursuant to California case law, legal title to property owned by a trust is held by the trustee rather than by the trust itself, and, when property is held in a revocable inter vivos trust, the settlor and lifetime beneficiary have the equivalent of full ownership of the property. Applying these legal principles to the present case, the court concluded: "In the present case, according to the trust declaration, the parties are the trustees of the trust and are both the trust's settlors and the beneficiaries of the trust during their lifetimes.

[10] Article 6.1 of the trust provides in relevant part: "The validity of this trust and the construction of its beneficial provisions shall be governed by the laws of the State of California in force from time to time. This Section shall apply regardless of any change of residence of the Trustee or any beneficiary . . . ."

[11] The court also addressed a forum selection clause contained in article 4.1 of the trust declaration, which provides that "[t]he appropriate Superior Court of the State of California shall have jurisdiction for all the purposes set forth in Section 17,200 of the California Probate Code." The court concluded that the provision is permissive rather than mandatory, as it does not include language indicating exclusivity, and it therefore did not deprive the court of jurisdiction. See *Animal Film, LLC* v. *D.E.J. Productions, Inc.*, 193 Cal. App. 4th 466, 471–72, 123 Cal. Rptr. 3d 72 (2011) (explaining that permissive forum selection clauses "provide for submission to jurisdiction in a particular forum without mandating it," whereas mandatory forum selection clauses contain "language of exclusivity").

The defendant challenges this aspect of the court's decision in a cursory manner, arguing that the language of the forum selection clause is "exclusive and therefore clearly mandatory" because of its use of the term "shall." We are not persuaded. Under California law, language providing that a court "shall have jurisdiction" does not indicate exclusivity of jurisdiction. See *Intershop Communications AG* v. *Superior Court*, 104 Cal. App. 4th 191, 196–97, 127 Cal. Rptr. 2d 847 (2002) (in comparing cases, use of phrase "shall have jurisdiction" was permissive, whereas use of phrase "shall have exclusive jurisdiction" was mandatory (emphasis omitted; internal quotation marks omitted)), review denied, California Supreme Court, Docket No. S112955 (March 26, 2003); see also *Hunt Wesson Foods, Inc.* v. *Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). Accordingly, the forum selection clause did not deprive the court of personal jurisdiction over the parties.

. . . As such, they have the equivalent of full ownership of the trust property, which includes the marital [residence]. . . . Moreover, as trustees, the parties hold legal title to the trust property, subject to their fiduciary relationship regarding the property. . . . Because the terms of the trust include no provision preventing the parties as trustees from transferring title of the marital [residence] to themselves or from selling the marital [residence], and the terms include a provision permitting the parties to revoke the trust, the parties' fiduciary obligations would not be implicated by an order from the court to sell the property and distribute the proceeds. Thus, the parties hold title to the marital [residence] and may sell or transfer [it] without violating their fiduciary obligations."[12] (Citations omitted.) The court further concluded: "[T]his court has the authority to order the sale of the marital [residence] and distribute the proceeds because the parties as trustees hold legal title to the marital [residence] and such an order would not violate any of the parties' fiduciary obligations under the trust."

After determining that "Connecticut courts have treated trust assets as 'property' under § 46b-81 and, accordingly, distributed the assets between the parties incident to a dissolution of marriage when the parties had interests in the trust that were more than mere expectancies," the court ordered the parties to sell the marital residence.

Before turning to the defendant's specific arguments in support of his claim on appeal, we set forth our standard of review. "Because resolution of this issue turns on construing trust language and applying legal principles, it is subject to plenary review." *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 455, 165 A.3d 1137 (2017).

---

[12] The court concluded that it would reach the same result if it applied Connecticut law.

A

The defendant first argues that the court improperly concluded that the trust is revocable and, therefore, that the marital residence is subject to equitable distribution. Specifically, he argues that the trust is irrevocable as it relates to the marital residence because (1) the marital residence is not community property, and (2) an amendment to the trust contains a no contest clause. The defendant further contends that, because the trust is irrevocable, he has no control over the trust property, neither party owns the marital residence, and it therefore cannot be distributed pursuant to § 46b-81. We are not persuaded.

As the trial court determined, our construction of the trust declaration is governed by the laws of the state of California pursuant to a choice of law provision contained in the trust declaration. Under California law, "a trustee holds legal title to property held in trust." *Boshernitsan* v. *Bach,* 61 Cal. App. 5th 883, 892, 276 Cal. Rptr. 3d 109 (2021); see also *JPMorgan Chase Bank, N.A.* v. *Ward,* 33 Cal. App. 5th 678, 685, 245 Cal. Rptr. 3d 303 (2019). "Furthermore, when settlors transfer property to a revocable living trust, there is even more reason to conclude that the property's title is held by the trustees, not the trust. Such property is considered the property of the settlor for the settlor's lifetime. . . . [*A*] *revocable inter vivos trust is recognized as simply a probate avoidance device, and when property is held in this type of trust, the settlor and lifetime beneficiary has the equivalent of full ownership of the property.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Boshernitsan* v. *Bach,* supra, 891–92.

In the present case, the trust declaration explicitly provides that the trust is revocable by either party during their joint lifetimes. Specifically, article 3.1 of the trust declaration provides in relevant part: "During the

joint lifetimes of the Settlors, this trust may be revoked in whole or in part with respect to community property by an instrument in writing signed by either Settlor and delivered to the Trustee and the other Settlor, and with respect to separate property by an instrument in writing signed by the Settlor who contributed that property to the trust, delivered to the Trustee. On revocation, the Trustee shall promptly deliver to both Settlors all or the designated portion of the community property trust assets, which shall continue to be the community property of the Settlors and shall be held and administered as community property. On revocation with respect to separate property, the Trustee shall promptly deliver to the contributing Settlor all or the designated portion of that property. . . ."

Notwithstanding this provision, the defendant first contends that the marital residence is not community property, and the trust is irrevocable as it relates to noncommunity property. Specifically, the defendant argues that the parties entered into a community property agreement on August 18, 1997,[13] the same date they created the trust, "which defined the property to be placed in the trust." The defendant contends that he purchased the marital residence in his name alone after the community property agreement was executed, and, thus, it is not community property. We are not persuaded by the defendant's argument. Article 3.1 of the trust declaration provides that the trust is revocable with respect to both community property and separate property.[14] Accordingly, the revocability of the trust

---

[13] The community property agreement was admitted as a full exhibit at trial.

[14] In one portion of his appellate brief, the defendant states that "the trust is not community property, nor separate property," but he does not explain how the property, if neither, would be characterized. See *In re Marriage of Valli*, 58 Cal. 4th 1396, 1399, 324 P.3d 274, 171 Cal. Rptr. 3d 454 (2014) (characterizing marital assets as either community property or separate property).

does not turn on whether the marital residence is characterized as community property.

The defendant also argues, with sparse analysis, that a no contest clause contained in an amendment to the trust, dated September 29, 2010, "clearly creates an unbreakable irrevocable trust."[15] The no contest clause provides in relevant part: "If any person, singly or in conjunction with any other person or persons, contests in any court the validity of this trust or of a deceased Settlor's last Will or seeks to obtain an adjudication in any proceeding in any court that this trust or any of its provisions or that such Will or any of its provisions is void, or seeks otherwise to void, nullify, or set aside this trust or any of its provisions, then the right of that person to take any interest in such Settlor's estate or in this trust shall be determined as it would have been determined had the person predeceased the execution of this instrument without surviving issue. . . ."

The foregoing language, however, already was included in article 6.8 of the original trust declaration.[16] We must "construe all parts of the instrument in relation to one another to form a consistent whole." *Autonomous Region of Narcotics Anonymous* v. *Narcotics Anonymous World Services, Inc.*, 77 Cal. App. 5th 950, 960–61, 292 Cal. Rptr. 3d 851 (2022); see also *Trolan* v. *Trolan*, 31 Cal. App. 5th 939, 949, 243 Cal. Rptr. 3d 264 (2019) ("the court must consider the whole of the trust instrument, not just separate parts of it"). In addition, "[w]e are required to construe the trust so as to give effect to each term it contains" and to read the trust declaration in a manner that "give[s] every expression some effect, rather than one that will render any of

---

[15] The September 29, 2010 amendment to the trust was admitted as a full exhibit at trial.

[16] The only new language contained in the amendment provides instruction as to how to proceed if the trust is contested by certain family members. The defendant does not rely on this new language in support of his argument.

the expressions inoperative." (Internal quotation marks omitted.) *Trolan* v. *Trolan*, supra, 950. Considering the trust declaration as a consistent whole, we are not persuaded that the no contest clause renders the trust irrevocable or that the amendment otherwise affects the revocability of the trust. Instead, because the original trust declaration includes both the no contest clause in article 6.8 and the revocation clause in article 3.1—which explicitly authorizes the parties to revoke the trust during their joint lifetimes—we cannot conclude that revocation of the trust would violate the no contest clause, as the defendant argues. The court, therefore, properly determined that the trust is revocable and, as a result, that the parties have the equivalent of full ownership of the property as the settlors and lifetime beneficiaries of the trust. See *Boshernitsan* v. *Bach*, supra, 61 Cal. App. 5th 891–92.

Because the court properly determined that the trust is revocable and that the parties have the equivalent of full ownership of the property, we further conclude that the court properly included the marital residence in the marital assets subject to equitable distribution pursuant to § 46b-81. Although our construction of the trust declaration was governed by California law, the ultimate question of whether the marital residence was properly subject to distribution as part of the parties' marital estate must be determined under the law of this state. See *Tremaine* v. *Tremaine*, 235 Conn. 45, 61 n.16, 663 A.2d 387 (1995). Section 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either spouse all or any part of the estate of the other spouse. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse,

when in the judgment of the court it is the proper mode to carry the decree into effect."

To determine whether a party's interest in property held in a trust is subject to equitable distribution pursuant to § 46b-81, Connecticut courts consider whether the party has a presently existing interest in the trust property that is more than a mere "expectancy . . . ." *Rubin* v. *Rubin*, 204 Conn. 224, 227–28, 527 A.2d 1184 (1987); see also, e.g., *Krafick* v. *Krafick*, 234 Conn. 783, 797, 663 A.2d 365 (1995) ("§ 46b-81 applies only to presently existing property interests, not mere expectancies" (internal quotation marks omitted)). If the party is a residuary beneficiary with an unvested interest in the trust, or if the party created the trust for the benefit of another, he does not have a presently existing interest in the trust property. See *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 465, 165 A.3d 1124 (2017); *Smith* v. *Smith*, 249 Conn. 265, 274, 752 A.2d 1023 (1999); *Rubin* v. *Rubin*, supra, 227–28; *Cooley* v. *Cooley*, 32 Conn. App. 152, 162–63, 628 A.2d 608, cert. denied, 228 Conn. 901, 634 A.2d 295 (1993). In addition, property held in trust may not be considered an asset of a party if he has no authority to invade the principal of the trust. See *Tremaine* v. *Tremaine*, supra, 235 Conn. 64.

In the present case, because the parties currently are the beneficiaries of the trust during their lifetimes, and they have the ability under the trust declaration to invade the trust property by revoking the trust, we conclude that they have a presently existing interest in the marital residence held by that trust. Accordingly, the court properly concluded that the marital residence was distributable marital property pursuant to § 46b-81.

B

The defendant also contends that the court improperly concluded that the parties' children were not necessary parties for the purpose of distributing the marital residence from the trust.

This court has adopted the view "that a third person with a claimed interest in property that is the subject of a dissolution action may properly be joined as a party. . . . [A]lthough the spouses are ordinarily the only proper parties to a dissolution action, joinder or intervention of third parties is permissible where third parties claim an interest in property involved in the proceedings. . . . The policy supporting this view is the desirability of avoiding multiple suits and of granting complete relief in a single proceeding." (Citations omitted.) *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 293, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990).

"Necessary parties . . . are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." (Internal quotation marks omitted.) *Garden Homes Profit Sharing Trust, L.P.* v. *Cyr*, 189 Conn. App. 75, 82 n.4, 206 A.3d 230 (2019).

"Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]." (Internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 705–706, 54 A.3d 564

(2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013); see also *Bender* v. *Bender*, 292 Conn. 696, 723 n.23, 975 A.2d 636 (2009) ("the nonjoinder of indispensable parties may violate due process because such parties must be given notice and an opportunity to protect their interests").

In the present case, as the trial court determined, the trust contains provisions that benefit the parties' children following the death of both parties. Specifically, article 2.4 of the trust provides that, upon the death of the surviving spouse, the parties' children would each receive an equal share of the trust property.

Prior to trial, the plaintiff filed a motion to cite in the cotrustees of the trust as an additional defendant, which the court granted, and she amended her complaint to reflect the parties' interests in the marital residence as the trustees and beneficiaries to the trust. The plaintiff did not seek to join the parties' children as additional parties, and the children did not seek to intervene in the action. The defendant's answer to the amended complaint contained a special defense in which he claimed that "[t]he plaintiff failed to join all interested and indispensable parties to the action as jurisdictionally required, and therefore no relief can be granted without affording all the beneficiaries an opportunity to be heard."

In its memorandum of decision, the court determined that the parties' children did not need to be joined as parties to the action. The court concluded that, "when distributing trust assets incident to a dissolution of marriage, children who are beneficiaries to the trust do not need to be joined as parties if they have no legal interest in the trust assets yet." In support of its conclusion, the court cited *Salvio* v. *Salvio*, 186 Conn. 311, 441 A.2d 190 (1982), which held that the savings account trusts of the parties' children were marital property, and because

those beneficiaries "had acquired no legal interest in the funds on deposit, they were not necessary parties for the purpose of establishing the trial court's jurisdiction over those accounts." Id., 323–25.

On appeal, the defendant claims that the parties' children were "indispensable parties" because they were remainder beneficiaries with a vested interest in the trust property. The defendant contends that, because the children were not made parties to the action, the court lacked jurisdiction to issue any orders related to the trust. He also argues that the children's due process rights were violated by the court's order related to the trust.

Initially, we note that "[i]t is well settled that the failure to join an indispensable party does not deprive a trial court of subject matter jurisdiction."[17] (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 186 Conn. App. 482, 497, 199 A.3d 1103 (2018), aff'd, 341 Conn. 815, 268 A.3d 595 (2022); see also *Bender* v. *Bender*, supra, 292 Conn. 723 n.23. In addition, the defendant failed to file a motion to strike the plaintiff's amended complaint for the nonjoinder of indispensable parties.[18] "[A]s set forth in [Practice Book §] 10-39,[19] the exclusive

[17] "[T]he failure to join an indispensable party results in a jurisdictional defect *only if* a statute mandates the naming and serving of [a particular] party." (Emphasis in original; internal quotation marks omitted.) *Day* v. *Seblatnigg*, 186 Conn. App. 482, 497, 199 A.3d 1103 (2018), aff'd, 341 Conn. 815, 268 A.3d 595 (2022). In the present case, the defendant does not argue that joinder of the parties' children was statutorily mandated.

[18] The defendant did file a motion to strike the plaintiff's amended complaint, but it was based solely on the ground that certain counts failed to state a claim upon which relief could be granted. See part III of this opinion.

[19] Practice Book § 10-39 provides in relevant part: "(a) A motion to strike shall be used whenever any party wishes to contest . . . (3) the legal sufficiency of any such complaint, counterclaim or cross complaint, or any count thereof, because of the absence of any necessary party or, pursuant to Section 17-56 (b), the failure to join or give notice to any interested person . . . . (d) A motion to strike on the ground of the nonjoinder of a necessary party or noncompliance with Section 17-56 (b) must give the name and residence of the missing party or interested person or such information as the moving party has as to the identity and residence of the missing party

remedy for nonjoinder of parties is by motion to strike.'' (Footnote added; internal quotation marks omitted.) *Kosiorek* v. *Smigelski*, supra, 138 Conn. App. 705. Nevertheless, the defendant raised the indispensable party issue as a special defense, which the plaintiff did not move to strike as permitted under § 10-39 (a) (5). See *Bender* v. *Bender*, supra, 722 n.23. Accordingly, we review the defendant's claim to determine whether the parties' children were necessary and indispensable parties, such that their omission violated due process; see id., 722 n.23; or created a final disposition inconsistent with equity or good conscience. See id., 724.

We conclude that the parties' children did not have a present interest in the trust sufficient to require their participation in the dissolution action. The trust is revocable, as we explained in part II A of this opinion, and the parties' children would receive a share of the trust property only upon the death of both parties. Because the parties' children had not yet acquired an interest in the trust, they were not necessary and indispensable parties to the action.

Our conclusion is supported by *Salvio* v. *Salvio*, supra, 186 Conn. 311, which similarly involved trusts that were revocable in nature. In that case, our Supreme Court considered whether the parties' children, as beneficiaries of the savings account trusts established by their parents, ''presently have a beneficial interest in those accounts sufficient to require their participation in the dissolution action . . . .'' Id., 321. The court looked to General Statutes (Rev. to 1981) § 36-110, the statute governing deposits in trust; id.; which is now codified at General Statutes § 36a-296. The court determined that there was a statutory presumption under which the beneficiary of an unqualified savings account

---

or interested person and must state the missing party's or interested person's interest in the cause of action.''

trust acquires no legal interest in the funds on deposit until the death of the depositor. Id., 322. In light of that statutory presumption, and "[i]n the absence of any unequivocal act by the defendant rendering the savings account trusts irrevocable or otherwise transferring ownership rights to the beneficiaries," our Supreme Court determined that the parties' children "held no beneficial interest in the accounts at the time of the dissolution of their parents' marriage." Id., 323. The court concluded that, because the parties' children had not acquired a legal interest in the savings account trusts, they were not necessary parties to the action. Id., 324.

The defendant argues that the present case is distinguishable from *Salvio* because the trusts at issue in that case were bank accounts, unaccompanied by written instruction, that were revocable pursuant to a statutory presumption. The defendant contends that, in contrast to *Salvio*, the trust in the present case has "an extensive written estate plan in place," under the terms of which the interests of the parties' children have vested. The defendant is correct that the savings account trusts in *Salvio* were not accompanied by a statement describing the nature of the trusts. See *Salvio* v. *Salvio*, supra, 186 Conn. 312–13. The fact that there is a written trust declaration in the present case, however, does not support the defendant's claim. As we already have explained, the terms of the trust explicitly provide that the trust is revocable and that the parties' children would receive a share of the trust property only upon the death of both parties. Thus, under those terms, the parties' children did not have a vested interest in the trust. See *Bartlett* v. *Bartlett*, 220 Conn. 372, 376 and n.6, 599 A.2d 14 (1991) (beneficiary of revocable trust does not have vested property interest, but rather mere expectancy, until death of settlor renders trust irrevocable); *Rubin* v. *Rubin*, supra, 204 Conn. 230–32 (same);

see also, e.g., *Krafick* v. *Krafick*, supra, 234 Conn. 788 n.12 ("by 'vested' we refer to pension interests 'in which an employee has an *irrevocable* . . . *right*, in the future, to receive his or her account balance . . . or his or her accrued benefit . . . regardless of whether the employment relationship continues' " (emphasis added)). Accordingly, we conclude that the defendant failed to establish that the parties' children were necessary and indispensable parties to the action.

### III

The defendant next claims that the plaintiff failed to plead sufficient facts to support a cause of action in counts two and three of her revised complaint. Specifically, the defendant contends that "the plaintiff failed to allege any new facts in count two or in count three of her [amended] complaint . . . other than those facts that were originally claimed in the dissolution action, related to a claim regarding the [trust], that would give rise to a Connecticut cause of action under our law" and failed to allege the violation of any law.[20] (Citation omitted.) In response, the plaintiff argues, inter alia, that she "was not pleading, nor did she have to, that the trustees or beneficiaries engaged in wrongful conduct. She was putting them on notice that she was asking the court to award her an interest in the [marital residence], in accordance with . . . § 46b-81, [and] that they themselves may have an interest." We agree with the plaintiff.

The following additional procedural history is relevant to our resolution of this claim. On February 16, 2022, when the parties' dissolution trial was scheduled to begin, the defendant's counsel brought to the court's attention that the marital residence was held in trust. The following day, the court continued the trial to afford

[20] We note that the defendant's brief is far from a model of clear analysis, and this claim in particular is difficult to divine.

the parties an opportunity to address the issue of the trust.

On February 24, 2022, the plaintiff filed a motion to cite in the trust as an additional defendant, with an amended complaint attached. The court granted the motion and ordered that "the complaint be amended to state facts showing the interest of [the trust] in this action and summon [the trust] to appear as a defendant in this action . . . ."

The defendant subsequently filed a motion to dismiss the action as against the trust on the basis that the proposed amended complaint attached to the motion to cite in, which had not been filed with the court, also had not been properly served on the trust. The court granted the defendant's motion to dismiss. On August 2, 2022, the plaintiff filed a motion to cite in the cotrustees of the trust as an additional defendant, which the court granted.

On August 31, 2022, the plaintiff filed the operative amended complaint, which contains three counts.[21] Count one, which was directed at the defendant, contained essentially the same allegations as the original complaint, seeking a dissolution of her marriage to the defendant along with, inter alia, an equitable property division. In count two of the amended complaint, which was directed at both parties as trustees of the trust, the plaintiff alleged that the parties were cotrustees of the trust, which they created in August, 1997; that the trust currently owns the marital residence; that the parties made several transfers of the marital residence throughout the years; that the parties used that marital residence as their marital home; and that "the plaintiff

---

[21] We note that, although the plaintiff labeled the operative complaint as a "cross complaint," the parties agree that it is, in effect, an amended complaint, and the defendant does not take issue with the mislabeling of this pleading.

claims an interest in [the marital residence] pursuant to [§] 46b-81 and such other [relief] as the court may deem appropriate and proper." Count three repeated the same allegations set forth in count two except that it named the parties as beneficiaries of the trust.

On November 18, 2022, the defendant filed a motion to strike counts two and three of the amended complaint, claiming, inter alia, that those counts failed to state a claim upon which relief could be granted. The court denied the defendant's motion to strike. The court explained in relevant part: "In the present dissolution of marriage action, title to the parties' marital residence is held in trust. The plaintiff and the defendant are cotrustees pursuant to the trust agreement and are also beneficiaries of the trust. The plaintiff alleges in count two of her [amended] complaint . . . that the parties are trustees of the [marital residence] and that the property was the parties' marital home. The plaintiff claims an interest in this real property pursuant to . . . § 46b-81 as trustee of the trust . . . . The plaintiff alleges in count three of her [amended] complaint, inter alia, that the parties have an interest in the [marital residence] as beneficiaries of the trust agreement. The plaintiff claims an interest in the [marital residence] pursuant to . . . § 46b-81 as a beneficiary of the trust . . . . The court finds that the allegations of counts two and three of the plaintiff's [amended] complaint, if proven, support causes of action claiming an interest in the [marital residence] in this dissolution of marriage action. The court therefore denies the defendant's motion to strike." (Citation omitted.)

The defendant subsequently filed an answer and special defenses in which he again asserted, inter alia, that counts two and three of the plaintiff's amended complaint failed to state a claim upon which relief could be granted; that the plaintiff "fail[ed] to allege any illegal, wrongful and/or tortious action" in those counts;

that the court lacked jurisdiction to terminate the trust and to award the real property owned by the trust pursuant to § 46b-81; and that, by entering into the trust, the plaintiff abandoned her equitable rights in the real property owned by the trust. The plaintiff did not file a reply to the special defenses.[22] In its decision, the court did not explicitly address the special defenses raised by the defendant. Nevertheless, in reaching its conclusion that the marital residence was subject to equitable distribution pursuant to § 46b-81, the court necessarily rejected the defendant's arguments.

On appeal, the defendant argues that, in counts two and three of the amended complaint, the plaintiff has failed to allege facts that "violate Connecticut law in any way, shape, or form" and that "[n]either the court nor the defendant can read the plaintiff's mind in an attempt to determine what illegality, breach, and/or tortious conduct she is trying to allege, if any."

On the basis of our review of the amended complaint, however, it is clear that the plaintiff was not attempting to raise separate causes of action against the trust, or to allege any wrongdoing in connection with the trust, in counts two and three. Instead, as the court concluded in its denial of the defendant's motion to strike,[23] counts

[22] In his appellate reply brief, the defendant focuses on the plaintiff's failure to file a reply to his special defenses. He argues that, pursuant to Practice Book § 10-19, the plaintiff's failure to respond to his special defenses results in her admission of the allegations contained therein. See Practice Book § 10-19 ("[e]very material allegation in any pleading which is not denied by the adverse party shall be deemed to be admitted, unless such party avers that he or she has not any knowledge or information thereof sufficient to form a belief"). The defendant, however, did not make this argument before the trial court, and we will not address a claim raised for the first time on appeal. See, e.g., *Westry* v. *Litchfield Visitation Center*, 216 Conn. App. 869, 878, 287 A.3d 188 (2022) ("[o]ur appellate courts, as a general practice, will not review claims made for the first time on appeal" (internal quotation marks omitted)).

[23] On appeal, the defendant does not address the court's decision on the motion to strike.

two and three of the amended complaint served to identify the parties as beneficiaries and trustees of the trust and to claim an interest in the property held in that trust pursuant to § 46b-81. This is particularly apparent when viewed in the context of the procedural history of this case, as the plaintiff's amendment to the complaint was consistent with the court's order, in granting the plaintiff's first motion to cite in the trust as an additional defendant, that "the complaint be amended to state facts showing the interest of [the trust] in this action . . . ." Because the plaintiff was not raising a separate cause of action in count two or in count three of her amended complaint, we conclude that she was not required to plead any additional facts.

IV

The defendant's final claim is that the court improperly denied a motion for contempt that he had filed prior to trial regarding the plaintiff's alleged failure to comply with certain discovery orders. We conclude that this claim is unreviewable.

The following additional procedural history is relevant to our resolution of this claim. On January 21, 2021, the defendant filed a request for production of documents, which sought, among other things, statements from bank accounts "in the name of [the plaintiff] individually, or in conjunction with any other person(s) or in the name of others for the use, benefit or trust for [the plaintiff]," and certain documents related to the sale of the property in Greece.

On January 13, 2022, the defendant filed a motion to compel the plaintiff to comply with his request for production of documents. The defendant alleged, in relevant part, that the plaintiff failed to produce any personal bank statements and any documents related to the sale of the property in Greece. On January 14,

2022, the court granted the defendant's motion to compel, ordering the plaintiff to "comply fully with all outstanding discovery requests on or before January 21, 2022."

On November 25, 2022, the defendant filed another motion to compel. In his motion to compel, the defendant argued that the plaintiff failed to produce any personal bank statements pursuant to any of his requests for production, "even though there is clear evidence she maintains bank accounts, or has maintained bank accounts, outside of the United States and in California." The defendant, more specifically, alleged that the plaintiff "has, or had, a bank account at Pacific Premier Bank in . . . California" and the plaintiff "has, or had, a personal bank account in Greece in accord with her own admissions through three various emails . . . ." (Citation omitted.) The defendant requested the court to order the plaintiff to produce those financial documents immediately. On December 12, 2022, the court granted the defendant's motion to compel and ordered the plaintiff to comply within ten days.

On December 20, 2022, the plaintiff filed a reply to the defendant's November 25, 2022 motion to compel. In her reply, the plaintiff asserted, in relevant part, that she "had an account at Piraeus Bank in Greece but that account was closed and there are no responsive documents for 2018, 2019, and 2020 for this bank," and "[t]he Pacific Premier Bank is an account under the control of [her] father and she has no access to those statements."[24]

---

[24] The plaintiff responded similarly to a request for production that the defendant had filed in July, 2022. Specifically, the plaintiff responded that she had provided the defendant with all of her bank statements and that "[t]here is no open account at Piraeus Bank in Greece and [she] has no account at Premier Bank in . . . California." The defendant acknowledged this response in his November 25, 2022 motion to compel.

On January 5, 2023, the defendant filed a motion for contempt in which he claimed that the plaintiff failed to comply with the court's January 14 and December 12, 2022 orders granting the defendant's respective motions to compel (discovery orders). The defendant requested as relief, inter alia, that the court order the plaintiff to provide full discovery compliance immediately.

On January 9, 2023, the first day of trial, the defendant filed an amended list of pending motions, which included his January 5, 2023 motion for contempt. Before trial started, the defendant's counsel brought the motion for contempt to the court's attention. He requested that the court address that motion first and issue an order for the plaintiff to provide the documents at issue, so that he could have those documents during the course of the trial. The plaintiff's counsel responded that she had already provided the defendant's counsel with the financial documents she had and that she "ha[d] no other documents available to [the plaintiff] to give to him." The court decided to proceed with the commencement of trial, explaining that, "[i]f the evidence demonstrates that I can make a finding of contempt, then potentially I'll make a finding of contempt, but we're going to proceed at this point."

During trial, the defendant's counsel asked the plaintiff about the motion for contempt and the financial documents that she allegedly had failed to produce, specifically, "bank accounts or information about money held in Greece and a bank account from a California bank with [the plaintiff's] name on it." The plaintiff responded that she was aware of the defendant's motion but that the documents the defendant had requested "were unproduceable." She explained that, although she previously had an account at Piraeus Bank in Greece, that account had been inactive since 2018,

it had no money it in, and it had been closed automatically for inactivity after two years. She further explained that the bank did not send out statements and nothing was online, so it was impossible for her to get statements from the bank to show that it was closed. As to the sale of the property in Greece, the plaintiff testified that she had invested the proceeds, which the defendant had agreed to do, and the money was not being held at a bank. The plaintiff also testified that she had not received any statements, nor had she requested any, from the person with which she had invested the money, and she had provided the defendant with everything she had with respect to the documentation.

Regarding the California bank account, the plaintiff testified that it was her father's bank account, and, even though she was a signer on it, it was not her account, she did not have access to it, and she had never seen a statement for it. The defendant's counsel showed the plaintiff exhibit S, which was marked as a full exhibit. Exhibit S is a letter, dated March 5, 2020, that had been sent from Pacific Premier Bank in California and was addressed to the plaintiff at the marital residence. The letter sought to confirm a request from the plaintiff to change the address information reflected on bank records, from the address of the marital residence to an address located in Northridge, California. The plaintiff testified that she presumed her father had requested the change of address, as it had her father's address on it. The plaintiff further testified that she was not familiar with the account, she had not previously received any other statements, and she was not aware if additional statements had been sent to her at the marital address because she had not lived there in nine years.

In its March 13, 2023 memorandum of decision, the court addressed the pending pendente lite motions:

"The court has considered all pending motions in making this decision. This decision resolves all pending motions. In the event this decision does not address a pending motion, the motion is denied."

The defendant subsequently filed a motion for articulation in which he requested, among other things, that the court explain the factual basis for its decision to deny the pendente lite motions, including the January 5, 2023 motion for contempt. The court summarily denied the motion for articulation. The defendant did not file a motion for review of the court's denial of the motion for articulation pursuant to Practice Book § 66-7.

On appeal, the defendant claims that the court improperly denied his motion for contempt. The defendant contends that, in denying his motion for contempt, the court improperly failed to order the plaintiff to disclose certain financial documents related to the sale of the property in Greece and the bank account in California, and, therefore, the court's financial orders were based on false information. We decline to review this claim because it is inadequately briefed, and the record is inadequate for review.

We first conclude that the defendant's claim is inadequately briefed. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and

fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Cohen* v. *Rossi*, 346 Conn. 642, 689, 295 A.3d 75 (2023).

In the present case, the defendant's claim is devoid of any citations to applicable legal authority. See, e.g., *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022) (brief containing "almost no citation to applicable legal authorities" was inadequate). Although the defendant's briefing on this issue contains some citations to the record and to legal principles about the importance of discovery in dissolution cases, it does not contain a discussion of the legal principles pertaining to motions for contempt. Consequently, the defendant's brief also does not provide an analysis applying those legal principles to the facts of the present case. "Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *McNamara* v. *McNamara*, 207 Conn. App. 849, 869, 263 A.3d 899 (2021); see also *Graham* v. *Graham*, 222 Conn. App. 560, 580–81, 306 A.3d 499 (2023) (claim was inadequately briefed where appellant failed to provide legal analysis pertaining to applicability of legal doctrines at issue). Accordingly, we conclude that the defendant's claim is inadequately briefed.

Moreover, the record is inadequate to review this claim. "It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . . Without an adequate record, [w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's rulings. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by the trial court. . . . Without the necessary factual and legal conclusions furnished by the trial

court, either on its own or in response to a proper motion for articulation, any decision made by us . . . would be entirely speculative." (Internal quotation marks omitted.) *Bayview Loan Servicing, LLC* v. *Park City Sports, LLC*, 180 Conn. App. 765, 781, 184 A.3d 1277, cert. denied, 330 Conn. 901, 192 A.3d 426 (2018).

The defendant's claim that the plaintiff failed to comply with the court's discovery orders is premised on his contention that "the evidence at trial demonstrated that the information/documents existed." As set forth previously in this opinion, however, the plaintiff testified at trial that the documents did not exist, or, alternatively, that she did not have access to them. The plaintiff's testimony was subject to a credibility determination by the court and, to the extent that it conflicted with the evidence presented by the defendant, that was a matter for the court to resolve. See *Delena* v. *Grachitorena*, 216 Conn. App. 225, 231, 283 A.3d 1090 (2022) ("[i]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony" (internal quotation marks omitted)). It is unclear from the court's memorandum of decision to what extent the court relied on or credited the plaintiff's testimony and whether the court found that the documents requested by the defendant in fact existed.[25] Thus, the record is inadequate for review. See *In re Vada V.*, 343 Conn.

---

[25] If the court found the plaintiff's testimony credible, it reasonably could have concluded that the plaintiff had complied with the court's discovery orders and, thus, that the defendant had failed to prove the plaintiff's wilful noncompliance with those orders; see *Puff* v. *Puff*, 334 Conn. 341, 365, 222 A.3d 493 (2020) (party seeking order of contempt must prove alleged contemnor's wilful noncompliance with order); or that the plaintiff was unable to comply with the court's orders because she did not have access to any additional documents. See id. ("[t]he inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt" (internal quotation marks omitted)).

730, 742, 275 A.3d 1172 (2022) (record was inadequate to review respondents' claims because it was silent on, and in some cases undermined, factual predicates to claims).

Although the defendant sought an articulation of the factual basis of the court's decision to deny his motion for contempt, he failed to file a motion for review of the court's denial of the motion for articulation pursuant to Practice Book § 66-7. "[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review." (Internal quotation marks omitted.) *Hallock* v. *Hallock*, 228 Conn. App. 81, 92 n.7, 324 A.3d 193 (2024). We recognize that, pursuant to Practice Book § 61-10 (b), "[t]he failure of any party on appeal to seek articulation pursuant to [Practice Book §] 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal." In the present case, however, Practice Book § 61-10 (b) does not bar forfeiture of the defendant's claim because his failure to file a motion for review is not the sole ground upon which we decline to review his claim; instead, as we already have discussed, the claim also is inadequately briefed. See *Pryor* v. *Pryor*, 162 Conn. App. 451, 459 n.7, 133 A.3d 463 (2016) (Practice Book § 61-10 (b) did not shield defendant from forfeiture of appellate review because, "besides failing to seek an articulation to provide an adequate record, the defendant has failed to adequately brief his claims"); see also *Gallagher* v. *Fairfield*, 339 Conn. 801, 817, 262 A.3d 742 (2021) (declining to consider claim where claim was inadequately briefed and record was inadequate, as plaintiff had not requested articulation); *State* v. *Waters*, 214 Conn. App. 294, 330–31, 280 A.3d 601 (declining to remand matter to trial court for articulation because defendant's failure to seek articulation

was not "sole ground" on which this court declined to review claim), cert. denied, 345 Conn. 914, 284 A.3d 25 (2022). Accordingly, we decline to consider this claim.

The judgment is affirmed.

In this opinion the other judges concurred.